# United States Court of Appeals

## For the First Circuit

No. 07-2697

UNITED STATES OF AMERICA,

Appellee,

v.

REY FRANCISCO QUIÑONES-MEDINA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Boudin, Selya, and Stahl, Circuit Judges.

Lydia Lizarribar-Masini on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney (Chief, Appellate Division), and Marshal D. Morgan, Assistant United States Attorney, on brief for appellee.

January 12, 2009

**SELYA**, **Circuit Judge**. Defendant-appellant Rey Francisco Quiñones-Medina urges us to vacate the sentence imposed following his conviction on one count of possessing with intent to distribute a kilogram of cocaine and one count of conspiring to possess with intent to distribute five or more kilograms of cocaine. See 21 U.S.C. §§ 841(a)(1), 846. The appellant advances four claims of sentencing error, which involve (i) the district court's refusal to afford him a mitigating role adjustment; (ii) its application of an offense-level enhancement for possession of a firearm during the commission of a drug-trafficking offense; (iii) its denial of a downward departure based on diminished mental capacity and, relatedly, its refusal to order a psychiatric evaluation; and (iv) its synthesis of the factors enumerated in 18 U.S.C. § 3553(a) when imposing sentence. Concluding, as we do, that this gallimaufry of claims lacks merit, we affirm.

There is no need to rehearse the background facts in great detail. Suffice it to say that the government proved at trial that the appellant and a coconspirator, Héctor Rivera-Quiles, agreed to sell a multi-kilogram load of cocaine. Unbeknownst to them, the prospective purchaser proved to be an undercover law enforcement agent, Pablo Rivera. When the coconspirators delivered one kilogram of cocaine as a first installment, the government sprung the trap.

In due course, the appellant was indicted, tried, convicted, and sentenced. That series of events forms the factual backdrop against which the appellant's claims of sentencing error arise.

Since the Supreme Court's landmark decision in United States v. Booker, 543 U.S. 220, 245-46 (2005), federal criminal sentencing has fallen into a familiar procedural paradigm:

> In constructing a sentence under an advisory guidelines regime, a sentencing court ordinarily should begin by calculating the applicable guideline sentencing range; then determine whether or not any departures are in order; then mull the factors delineated in 18 U.S.C. § 3553(a) as well as any other relevant considerations; and, finally, determine what sentence, whether within, above, or below the guideline sentencing range, appears appropriate.

United States v. Pelletier, 469 F.3d 194, 203 (1st Cir. 2006); see also United States v. Jiménez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006) (en banc).

In the case at hand, the appellant finds no fault with most of the district court's guideline computations. He does, however, challenge two decisions anent offense-level adjustments — one withheld and one applied — that factored into the construction of the guideline sentencing range (GSR). In the interest of expediency, we bypass the uncontroversial steps in the sentencing pavane and proceed directly to these two claims of error.

-3-

The first deals with the appellant's role in the offense. Subject to certain conditions, a defendant's total offense level (and, thus, his GSR) may be adjusted, up or down, if his role in the offense of conviction is more or less significant than the norm. The appellant's asseverational array implicates one such adjustment: upon a finding that "the defendant was a minor participant in [the relevant] criminal activity," the guidelines authorize the sentencing court to decrease the offense level by two levels. USSG §3B1.2(b).

A defendant who seeks a downward adjustment due to an ostensibly mitigating role in the offense of conviction bears the burden of proving his entitlement to that reduction. United States v. Mateo-Espejo, 426 F.3d 508, 512 (1st Cir. 2005). He must carry that burden by a fair preponderance of the evidence. United States v. Teeter, 257 F.3d 14, 30 (1st Cir. 2001). When a defendant seeks a downward adjustment for a minor role, the necessary showing entails proof both that he is less culpable than most of those with whom he collogued and that he is less culpable than the mine-run of other miscreants who have committed similar crimes. United States v. Ocasio, 914 F.2d 330, 333 (1st Cir. 1990).

Appellate review of such decisions is for the most part deferential. Determining the nature of a defendant's role is a fact-specific enterprise. Consequently, we review a district court's resolution of the facts relative to a minor role adjustment

-4-

for clear error, applications of law to those raw facts somewhat less deferentially, and purely legal questions de novo. It follows inexorably that, absent an error of law, battles over where a particular defendant falls along the role-in-the-offense continuum "will almost always be won or lost in the district court." United States v. Graciani, 61 F.3d 70, 75 (1st Cir. 1995).

Before us, the appellant labors to portray himself as a simple courier who was participating in his first drug transaction. This self-portrait has a dubious provenance.

The record indicates that the appellant met Rivera (the undercover agent) on August 5, 2004. He was introduced to the agent as an "associate" of Rivera-Quiles's. From that point forward, he played an active role in the cocaine-sale negotiations. In that capacity, he attended at least two face-to-face meetings with the putative purchaser, during which the participants discussed not only the planned sale of five kilograms of cocaine but also the possible transport of even larger quantities of contraband from St. Thomas to Puerto Rico.

There was more. The appellant's failure to appear with the drugs on the appointed date temporarily sidetracked the planned sale and sparked further negotiations. These negotiations resulted in a scheduled two-stage transaction, which would begin with the delivery of one kilogram of cocaine and payment for that delivery.

After that, the remaining four kilograms were to be produced and paid for.

The revised plan was set in motion. It was the appellant who made the first-stage delivery, traveling separately from his coconspirator (who was also present). The men were caught red-handed and arrested on the spot.

These facts support a reasonable inference that the appellant was more than a simple courier; they support an inference of full-fledged participation. Because that is so, we cannot say either that the appellant carried his burden of proving that he played only a minor part in the criminal activity or that the district court clearly erred in refusing to grant him a mitigating role adjustment.

We add that, even if the appellant were accurate in classifying himself as a courier, that classification is not a talisman that automatically opens a pathway to a minor role adjustment. See, e.g., Mateo-Espejo, 426 F.3d at 512; United States v. Paz Uribe, 891 F.2d 396, 399 (1st Cir. 1989). Some couriers may be fringe participants in a drug-trafficking scheme, but others may be more central to the plot. Within wide limits, the decision as to the degree of centrality is best left to the sentencing court. See Ocasio, 914 F.2d at 333. At any rate, these limits were not exceeded here: the evidence as to the appellant's level of responsibility and participation, objectively scrutinized,

does not suggest that the appellant was substantially less culpable than either his coconspirator or the archetypical drug trafficker.

We turn next to the district court's application of a two-level weapons enhancement. "If a dangerous weapon (including a firearm) was possessed" during the course of a drug-trafficking offense, whether by the defendant or by a coconspirator, the sentencing guidelines authorize a two-level increase in the defendant's offense level. USSG §2D1.1(b)(1). To warrant the enhancement the presence of the weapon must have been known to, or reasonably foreseeable to, the defendant. See id. §1B1.3(a)(1)(B); see also United States v. Ortiz-Torres, 449 F.3d 61, 77 (1st Cir. 2006); United States v. Casas, 356 F.3d 104, 129 (1st Cir. 2004); United States v. Bianco, 922 F.2d 910, 912 (1st Cir. 1991). We review a sentencing court's fact-based determination that such an increase is warranted for clear error. United States v. Sostre, 967 F.2d 728, 731 (1st Cir. 1992).

Where a firearm has been found at the scene during a drug deal, the enhancement should apply "'unless it is clearly improbable that the weapon was connected with the offense.'" United States v. Sandoval, 204 F.3d 283, 287 (1st Cir. 2000) (quoting USSG §2D1.1, cmt. n.3). That connection may be, among other things, the weapon's utility for protection of the drugs, the trafficking operation, or the proceeds of the operation. See

United States v. Castillo, 979 F.2d 8, 10 (1st Cir. 1992); United States v. Corcimiglia, 967 F.2d 724, 727 (1st Cir. 1992).

In this instance, the sentencing court supportably could find that the appellant and Rivera-Quiles conspired to sell five kilograms of cocaine for $80,000 in a two-stage transaction. They arrived at the agreed rendezvous point for the first stage in separate cars, but parked within fifteen feet of each other. They were arrested on the spot and, in an ensuing search of Rivera-Quiles's car, agents discovered a loaded and easily accessible handgun under a floor mat. Given the substantial value of the contraband and the risks inherent in dealing with a little-known purchaser, we discern no clear error in the district court's finding that the appellant either knew or reasonably should have foreseen that his coconspirator would be armed.

We are unpersuaded by the appellant's self-serving assurance that he was purposely kept in the dark about "the possession, knowledge or foreseeability of a weapon for the drug transaction." To corroborate this assurance, he points to Rivera-Quiles's statement that he possessed the gun "[j]ust in case I needed it for something, you know how things are on the street." Viewed in context, that statement is cold comfort to the appellant.

First and foremost, the statement is consistent with the sentencing court's rationale. After all, one of the things that happens "on the street" is the theft of drugs during the course of

-8-

illicit trafficking. See, e.g., United States v. Beasley, 442 F.3d 386, 388 (6th Cir. 2006); Chia v. Cambra, 360 F.3d 997, 1013 (9th Cir. 2004); United States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002). One is reminded of the drollery, sometimes attributed to P. G. Wodehouse, that "[t]here is no honor among thieves."

In any event, even the appellant's interpretation of the statement does not provide him with a safe harbor. The presence of an alternative basis for the possession of a weapon does not render a finding of a protection-related purpose clearly erroneous. See Corcimiglia, 967 F.2d at 727; United States v. Almonte, 952 F.2d 20, 25 (1st Cir. 1991).

That puts an end to the appellant's assault on the construction of the GSR. His next contention posits that the sentencing court, having constructed the GSR, mishandled his assertion of diminished mental capacity. This assignment of error has two sub-parts. We discuss them sequentially.

The appellant's initial premise, though garbled, seems to be that the district court erred in refusing to depart downward from the GSR based on his diminished mental capacity. See USSG §5K2.13. This is a non-starter: the decision to depart on that ground is discretionary, and appellate courts ordinarily lack jurisdiction to consider an appeal from the denial of a discretionary departure. See, e.g., United States v. Saldana, 109 F.3d 100, 103 (1st Cir. 1997); United States v. Pierro, 32 F.3d

611, 619 (1st Cir. 1994); <u>United States</u> v. <u>Amparo</u>, 961 F.2d 288, 292 (1st Cir. 1992).

To be sure, this rule — like virtually every general rule — admits of an occasional exception.  The exception that is of possible concern here holds that appellate jurisdiction will lie to test the sentencing court's purported failure to recognize that it possessed the authority to depart.  <u>See</u> <u>Amparo</u>, 961 F.2d at 292. The record, however, supplies no hint that the district court misunderstood its authority, so that exception does not pertain. Consequently, we lack jurisdiction to consider the appellant's argument that the district court should have departed downward on the basis of his diminished mental capacity.

Relatedly, the appellant complains that the court erred by refusing to enable him to obtain a psychiatric evaluation incident to sentencing.  The procedural underpinnings of this plaint are obscure.  We have tried to reconstruct them.

As an indigent, the appellant was entitled to the benefits of the Criminal Justice Act (CJA), 18 U.S.C. § 3006A. These benefits include court-appointed counsel, <u>id.</u> § 3006A(b), and reasonable access to needed ancillary resources, <u>id.</u> § 3006A(e)(1). Such resources include, when appropriate, funds for the services of psychiatric experts.  <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Mastera</u>, 435 F.3d 56, 62-63 (1st Cir. 2006).

The CJA applies in this case, and the appellant is represented by court-appointed counsel. Given this circumstance, we interpret this facet of his assignment of error as a claim that the sentencing court erred in not allowing him funds to hire a mental-health professional to assess his competency.[1] So viewed, we have jurisdiction over the claim.

The CJA does not afford access to psychiatric experts on demand. Thus, a trial court "is not required to grant every motion questioning an accused's competency." United States v. Pellerito, 878 F.2d 1535, 1544 (1st Cir. 1989). We review the denial of a request to fund a psychiatric or psychological evaluation for abuse of discretion. United States v. Manning, 79 F.3d 212, 218 (1st Cir. 1996). When medical evidence suggesting diminished mental capacity is either weak or not present at all, a psychiatric expert need not be provided. See, e.g., Mastera, 435 F.3d at 63 (upholding denial of funds for psychological expert where defendant did not provide a sufficient evidentiary predicate to sentencing court).

---

[1] We think it important to note that the appellant was never denied psychiatric treatment, indeed, he was treated regularly by mental-health professionals from both the State Insurance Fund and his place of incarceration. He has not alleged any inadequacy in care. Nor did he question his own competency either before or during trial. The potential relevance of his anxiety, somnambulism, and bouts with depression relates exclusively to their effect (if any) on the length of his sentence.

We see no abuse of discretion here. The record makes pellucid that the trial court reviewed all the relevant psychiatric records before imposing sentence. These included the report of Dr. Luis Humberto Negrón-Delgado (Dr. Negrón) of the State Insurance Fund (SIF), a translated version of which was attached to the appellant's sentencing memorandum (filed on December 5, 2006). In finding no diminished mental capacity, the court determined that the report confirmed a diagnosis of depression without showing how (if at all) the condition affected the appellant's ability either to tell right from wrong or to control his actions.

The court subsequently revisited Dr. Negrón's report when deciding whether to appoint (or, more exactly, to authorize funds for the defense to hire) a psychiatric expert. In an order dated May 16, 2006, the court requested all medical records from the Metropolitan Detention Center (MDC)[2] and the SIF. At the same time, the court informed the appellant and his lawyer that, should they have any other pertinent information or records, they should submit them promptly. After reviewing the collected records, the court, in an order dated May 1, 2007, declined to authorize funds for the defense to hire a psychiatric expert.[3]

_____

[2] The MDC is the correctional facility at which the appellant was being detained.

[3] There is some suggestion in the appellant's brief that the district court precluded him from calling Dr. Negrón as a witness at the disposition hearing. The record does not bear out that suggestion. In any event, the appellant makes no developed

-12-

The short of it is that the district court, on numerous occasions, implored the appellant to show a link between his psychological problems and some diminished mental capacity. The appellant never did so. The court then reviewed all the available records and found that the appellant's mental condition did not bear materially on the sentence that he deserved. Given the absence of a demonstrated connection between the appellant's symptomology and the issues that were relevant to sentencing, it was within the realm of the district court's discretion to conclude that the appointment of a psychiatric expert most likely would have been an exercise in futility. See, e.g., United States v. Greenfield, 244 F.3d 158, 162 (D.C. Cir. 2001) ("A diagnosis of depression, alone, does not establish that a defendant suffered from significantly reduced mental capacity under §5K2.13." (internal quotation marks omitted)).

This brings us to the appellant's fourth and final claim of error, which involves the sentence as a whole. The district court determined the GSR to be 151-188 months.[4] Having disposed of the appellant's objections to the court's offense-level

argumentation on this point, so any claim of error has been abandoned. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

[4] The GSR is based on an adjusted offense level of 34 and a criminal history category of I.

adjustments and lacking jurisdiction to consider the court's refusal to depart, we accept that GSR.

Of course, the district court was obliged to proceed to a consideration of the section 3553(a) factors. See United States v. Martin, 520 F.3d 87, 91 (1st Cir. 2008); Pelletier, 469 F.3d at 203. The court did so. Then, after explicitly referring to section 3553(a), it imposed a 151-month term of immurement (the nadir of the GSR).

The appellant argues that, despite paying lip service to section 3553(a), the lower court neglected to address the statutory factors properly. Because the appellant failed to preserve this issue below, our review is for plain error. United States v. Turbides-Leonardo, 468 F.3d 34, 37 (1st Cir. 2006). In the sentencing context:

> Review for plain error entails four showings: (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings.

United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

The appellant relies on Martin, 520 F.3d at 91, for the proposition that, in an advisory guidelines regime, a sentencing court should not mechanically sentence a defendant within the GSR. We have no quarrel with that sound proposition. We do take issue, however, with the appellant's assertion that the court below engaged in a "perfunctory" treatment of the section 3553(a)

-14-

factors, thus indicating its preference for a mechanical application of the GSR.

The imposition of sentence should not be viewed in isolation. "While a sentencing court must consider all of the applicable section 3553(a) factors, it is not required to address those factors, one by one, in some sort of rote incantation when explicating its sentencing decision." United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006). The court's ultimate statement of reasons need not be either lengthy or detailed. United States v. Gilman, 478 F.3d 440, 446 (1st Cir. 2007); Turbides-Leonardo, 468 F.3d at 40. Nor should it be evaluated in a vacuum, divorced from both context and common sense.

In this case, the district court heard and disposed of a number of issues that were raised between the date that the presentence report was first prepared and the date on which sentence was imposed. In the course of this serial progression, the court issued a number of orders reflecting its thinking about a wide variety of sentence-related issues. Taken in the aggregate, those orders, coupled with what the court actually said at the disposition hearing, make it transparently clear that the court neither applied the GSR mechanically nor gave the section 3553(a) factors short shrift. There was no error, plain or otherwise.

-15-

We need go no further.  For the reasons elucidated above, we affirm the appellant's conviction and sentence.

**Affirmed**.