# United States Court of Appeals
## For the First Circuit

No. 08-1377

UNITED STATES OF AMERICA,

Appellee,

v.

VICTOR VARGAS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Lynch, Chief Judge,
Selya and Boudin, Circuit Judges.

Edward J. O'Brien and O'Donnell, Trossello & O'Brien, LLP on brief for appellant.
Michael J. Sullivan, United States Attorney, and Sandra S. Bower, Assistant United States Attorney, on brief for appellee.

March 17, 2009

**SELYA**, **Circuit Judge**.  Defendant-appellant Victor Vargas pleaded guilty to a charge of conspiring to possess with intent to distribute five or more kilograms of cocaine.  See 21 U.S.C. §§ 841(a)(1), 846.  The district court sentenced him to an 87-month term of immurement.

In this venue, he advances three claims of sentencing error.  These claims relate to (i) the court's refusal to grant a downward role-in-the-offense adjustment; (ii) its ostensible failure sufficiently to consider factors made relevant to the imposition of sentence by 18 U.S.C. § 3553(a); and (iii) a perceived sentencing disparity.  Concluding, as we do, that all of these claims lack merit, we affirm.

## I.  BACKGROUND

Where, as here, a sentencing appeal follows a guilty plea, we glean the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the record of the disposition hearing.  United States v. Mateo-Espejo, 426 F.3d 508, 509 (1st Cir. 2005); United States v. Dietz, 950 F.2d 50, 51 (1st Cir. 1991).

As a result of a Boston-based wiretap operation involving seventeen different cellular telephones and ten different individuals, the government learned of a planned shipment of cocaine.  Acting on this information, law enforcement agents surveilled both a truck thought to be transporting the contraband

-2-

and a restaurant thought to be the delivery site. When federal agents stopped the truck on September 13, 2006, the appellant — who owned the truck and was driving it — consented to a search. The search revealed a hidden compartment, in which approximately thirty kilograms of cocaine were secreted.

The appellant admitted that he had been paid $3,500 by someone he could not identify to transport an unknown cargo from Texas to New Jersey. He later backtracked, conceding that he knew the person who hired him and that he had participated in telephone conversations relating to future deliveries. He nonetheless continued to maintain that he did not learn the nature of his cargo until after the trip had begun.

Indictment and arraignment followed apace. The appellant maintained his innocence. Then, on October 4, 2007, he entered a guilty plea.

In due season, a probation officer prepared the PSI Report. In it, the probation officer recommended, among other things, a three-level downward adjustment for acceptance of responsibility, see USSG §3E1.1, and a two-level reduction attributable to the appellant's minor role in the offense of conviction, see id. §3B1.2(b). The latter recommendation was premised on the appellant's lack of knowledge of the quantity of drugs being hauled and his limited involvement in the overall conspiracy. The probation officer also noted that the safety valve

provision would apply if the appellant, a first offender, satisfied the requisite five-part test. See 18 U.S.C. § 3553(f); USSG §5C1.2. In this regard, the probation officer observed that, absent the safety valve, the appellant would be subject to a 120-month mandatory minimum sentence. See 21 U.S.C. § 841(b)(1)(A); USSG §5G1.1(b).

The government objected to both the proposed minor role adjustment and the suggested deployment of the safety valve. These objections were grounded largely on the input of a cooperating witness who, according to the government, would cast serious doubt on the appellant's veracity anent the extent of his knowledge and his degree of complicity.

Confronted with this aposematic objection, the appellant opted for a third proffer session. During that session, he finally admitted that he had known all along that he was transporting narcotics; indeed, he had helped load the drugs into the "hide" in his truck. He also admitted having been paid $900 to haul a shipment of drugs on a prior occasion.

The sentencing court convened the disposition hearing on March 10, 2008. The court granted the appellant both safety valve and acceptance of responsibility reductions but denied him any mitigating role adjustment. With a total offense level of 29 and a criminal history category of I, the guideline sentencing range (GSR) was 87 to 108 months. The court declined to vary from that

range and sentenced the appellant at the low end. This timely appeal ensued.

## II. ANALYSIS

Following the Supreme Court's decision in United States v. Booker, 543 U.S. 220, 245 (2005), we created a by-now-familiar roadmap for sentencing under an advisory guideline regime:

> [A] sentencing court ordinarily should begin by calculating the applicable guideline sentencing range; then determine whether or not any departures are in order; then mull the factors delineated in 18 U.S.C. § 3553(a) as well as any other relevant considerations; and, finally, determine what sentence, whether within, above, or below the guideline sentencing range, appears appropriate.

United States v. Pelletier, 469 F.3d 194, 203 (1st Cir. 2006) (citing United States v. Jiménez-Beltre, 440 F.3d 514, 518-19 (1st Cir. 2006) (en banc)).

In this instance, the district court traveled the designated route. The appellant's challenge implicates three of the district court's subsidiary determinations. We deal with those three items sequentially.

### A. Mitigating Role Adjustment.

A sentencing court may adjust a defendant's offense level, up or down, if the defendant's role in the offense of conviction appears more or less significant than the norm. United States v. Quiñones-Medina, 553 F.3d 19, 22 (1st Cir. 2009). Pertinently, the guidelines authorize a two-level decrease in

-5-

offense level when "the defendant was a minor participant in [the relevant] criminal activity." USSG §3B1.2(b). The appellant claims that the district court erred in refusing to grant him such a boon.

Due to the fact-specific nature of the inquiry into a defendant's role in the offense, appellate review of such determinations is generally deferential. See United States v. Graciani, 61 F.3d 70, 75 (1st Cir. 1995). "Consequently, we review a district court's resolution of the facts relative to a minor role adjustment for clear error, applications of law to those raw facts somewhat less deferentially, and purely legal questions de novo." Quiñones-Medina, 553 F.3d at 22. Given this algorithm, factbound battles over a defendant's role in an offense "will almost always be won or lost in the district court." Graciani, 61 F.3d at 75.

The appellant's first foray is an attempt to secure de novo review. He argues that the sentencing court precluded him as a matter of law from a minor role adjustment by holding him responsible for only the drugs actually transported in his truck (as opposed to the more sizable quantities distributed by the conspiracy as a whole).

This argument strikes a counter-intuitive chord. In narcotics cases, a defendant's offense level is driven largely by the quantity of drugs attributed to him, see, e.g., United States v. Colón-Solis, 354 F.3d 101, 103 (1st Cir. 2004), and it is

-6-

unusual for a defendant to complain about being held responsible for a smaller quantity.

Here, however, the appellant wishes, figuratively, to have his cake (i.e., to gauge his offense level by a lesser drug quantity) and eat it too (i.e., to gauge his role in the offense with reference to the overall conspiracy, which handled greater quantities of drugs). Despite the apparent inconsistency, there is nothing wrong with that approach: a defendant may accept the sentencing court's restricted drug-quantity finding (limited to a single shipment) and nonetheless argue that the relevant crime, for purposes of a role-in-the offense adjustment, is the broader conspiracy.

So it is here. While not challenging the sentencing court's drug-quantity finding as such, the appellant argues that the court, in focusing too intently on this finding, impermissibly rejected his assertion that he occupied a minor role in the overall conspiracy without further inquiry.

This argument has two aspects. First, the appellant quotes the sentencing court's statement that he was being "held responsible only for the amount of drugs in his truck, not for the drugs distributed by the whole conspiracy," and suggests that this statement and others like it somehow show that the court foreclosed a minor role adjustment as a matter of law. This suggestion misconceives the thrust of the sentencing court's finding.

-7-

We do not read the record as showing that the sentencing court precluded the appellant from arguing for a mitigating role adjustment. Putting the statements in context, it is readily evident that the court considered the appellant's plea for a minor role adjustment on the merits. It weighed all the facts, particularly those unearthed at the third and final proffer session,[1] and reasoned that the appellant was not a minor player in light of his prior participation in the transportation of contraband, his help in loading the truck, the amount of money paid to him, the quantity of drugs that had been entrusted to his care, and his willingness to discuss a role in future deliveries. This was a factual determination, pure and simple, not the preclusion of a mitigating role adjustment as a matter of law.

Second, the appellant posits that the sentencing court misinterpreted the guidelines when it focused its consideration of his level of participation on the drugs found in his truck. This complaint lacks force.

It is, of course, true that a defendant's role in the offense should not be predicated "solely on the basis of elements and acts cited in the count of conviction." USSG Ch.3, Pt.B, intro. cmt. This means that a defendant's role must be evaluated based on his relevant conduct as a whole. See United States v.

---

[1] Those facts were not available to the probation officer who composed the PSI Report.

Rodríguez De Varón, 175 F.3d 930, 940-41 (11th Cir. 1999); United States v. García, 954 F.2d 12, 15 (1st Cir. 1992); see also USSG §1B1.3(a)(1)-(4). But when the offense of conviction is a conspiracy, acts not forming the basis of the count of conviction may "be included as relevant conduct . . . [so long as] those acts were reasonably foreseeable by the defendant and committed in furtherance of the conspiracy." García, 954 F.2d at 15. Where a defendant is hired to transport a single shipment of drugs and does not otherwise participate in the larger conspiracy, his relevant conduct ordinarily will be limited to that shipment. See USSG §1B1.3, cmt. (n.2(c)(3)).

Viewed charitably, the appellant's involvement in the conspiracy was along those lines. He drove a delivery truck containing a single shipment of cocaine. There was no evidence that he had any actual involvement in other facets of the conspiracy.[2] Thus, the district court supportably confined his relevant conduct to the single thirty-kilogram haul.

The appellant contends that this relevant conduct determination somehow constrained the court to preclude a minor role adjustment as a matter of law. That contention confuses plums

_____

[2] Although the record contained evidence of the appellant's participation in an earlier drug transport, there was no evidence linking that shipment to the charged conspiracy. The telephone calls noted in the record related to the possibility of unspecified future deliveries. Those calls were relevant to show the appellant's knowledge of the broader conspiracy but not to show actual participation in it.

with pomegranates: limiting a defendant's relevant conduct to one phase of a conspiracy does not preclude an independent role-in-the-offense inquiry. See Rodríguez De Varón, 175 F.3d at 943 (explaining that a defendant is not automatically precluded from a mitigating role adjustment where he is held accountable only for the amount of drugs that he personally handled); see also USSG §3B1.2, cmt. (n.3(A)) (noting that "a defendant who is convicted of a drug trafficking offense, whose role in that offense was limited to transporting or storing drugs and who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stored is not precluded from consideration for an adjustment under this guideline").[3] The record makes clear that the district court realized as much. The question was whether the appellant occupied a minor role in the conspiracy as a whole, and that is precisely the question that the district court endeavored to answer.

The appellant's final argument on this point asserts that the sentencing court failed properly to assess his role. This is a factbound inquiry, and we review the lower court's determination only for clear error. See Quiñones-Medina, 553 F.3d at 23.

---

[3] This application note, adopted in 2001, resolved a circuit split on this issue. After the amendment's adoption, courts uniformly have followed Rodríguez De Varón. See, e.g., United States v. Rodríguez-Cardenas, 362 F.3d 958, 960 (7th Cir. 2004).

A defendant who seeks a minor role adjustment bears the burden of proving his entitlement thereto. <u>Mateo-Espejo</u>, 426 F.3d at 512; <u>United States</u> v. <u>Sánchez</u>, 354 F.3d 70, 74 (1st Cir. 2004). In order to carry that burden, he must show, by a preponderance of the evidence, that he was less culpable than both his confederates and the mine-run of other wrongdoers who have committed similar crimes. <u>United States</u> v. <u>Ocasio</u>, 914 F.2d 330, 333 (1st Cir. 1990).

In this instance, the appellant claims that the sentencing court improperly fixated on the amount of drugs in his truck. This was error, he says, because he was a mere courier, which made him less culpable than his comparators both within the charged conspiracy and in drug-trafficking conspiracies generally.

The appellant seems to assume that couriers are automatically entitled to mitigating role adjustments. That is an incorrect assumption. <u>See</u>, <u>e.g.</u>, <u>Quiñones-Medina</u>, 553 F.3d at 23; <u>Mateo-Espejo</u>, 426 F.3d at 512; <u>United States</u> v. <u>Paz Uribe</u>, 891 F.2d 396, 399 (1st Cir. 1989). Some couriers are more central to the plot than others.

The defendant also seems to assume that because he participated in only one phase of the conspiracy, he necessarily played a minor role. That, too, is an incorrect assumption. A defendant who participates in only one phase of a conspiracy may nonetheless be found to play a non-minor role in the conspiracy as

a whole.  See, e.g., United States v. Ortiz-Santiago, 211 F.3d 146, 149 (1st Cir. 2000); United States v. Buenrostro, 868 F.2d 135, 138 (5th Cir. 1989).

The facts here are not hospitable to the appellant's claim.  While he strenuously insists that he played only a peripheral role in the overarching conspiracy, the record (for reasons already discussed) supports the sentencing court's finding that he was no less culpable than the mine-run of drug traffickers.

The appellant's "fixation" argument does not undermine this conclusion.  Although the sentencing court commented specifically on the large quantity of drugs hauled by the appellant, that was a relevant datum in assessing his role in the conspiracy.  See Rodríguez De Varón, 175 F.3d at 943.

In any event, the sentencing court did not "fixate" on this one fact.  It viewed the appellant's participation as a whole and concluded that his role was not minor when compared to other couriers.[4]

The decision as to where on the status continuum a particular defendant falls is, within wide limits, best left to the sentencing court.  See Ocasio, 914 F.2d at 333.  Those limits were not exceeded (or even closely approached) in the instant case.  It

---

[4] The court observed, for example, that the appellant was more culpable than a courier "who gets on [an airplane] with something strapped to their chest."

follows that the district court's finding of "no minor role" was not clearly erroneous.

## B. 18 U.S.C. § 3553(a).

We turn next to the appellant's claim that the sentencing court did not sufficiently address the factors enumerated in 18 U.S.C. § 3553(a). We evaluate this claim under a deferential abuse-of-discretion standard. See Gall v. United States, 128 S. Ct. 586, 591 (2007); United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008).

There is no doubt but that, in sentencing, the district court should treat the GSR merely as a starting point. Martin, 520 F.3d at 91. The next steps "should include hearing argument from the parties as to the proper sentence in the particular case, weighing the applicability of the sundry factors delineated in 18 U.S.C. § 3553(a), reaching an ultimate sentencing determination, and explicating that decision on the record." Id. In this evaluative process, the court should remain cognizant that variances from the guidelines — even substantial variances — are not always beyond the pale. Id.

None of this means, however, that a sentencing court is required to provide a lengthy and detailed statement of its reasons for refusing to deviate from the GSR. The opposite is true. See, e.g., United States v. Gilman, 478 F.3d 440, 446 (1st Cir. 2007); United States v. Turbides-Leonardo, 468 F.3d 34, 40 (1st Cir.

-13-

2006).  There is no need for the sentencing court to engage "in some sort of rote incantation when explicating its sentencing decision."  United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006).

In this case, the appellant complains that the court below did not provide a plausible explanation as to why a non-guideline sentence would not have sufficed to satisfy the legitimate objectives of sentencing.  In support, he claims that the court did not adequately address certain of the section 3553(a) sentencing factors, including his "lack of a prior record, legitimate work history, lack of violent behavior [and] scant potential of recidivism."

The record contradicts this plaint.  The sentencing court, after calculating the GSR, invited the appellant to argue under section 3553(a) for a below-the-range sentence.  After hearing that argument, weighing all the facts, and citing a number of specific considerations (e.g., the appellant's prior involvement in drug trafficking), the court concluded that nothing in the appellant's "personal history and characteristics" warranted a variant sentence below the bottom of the GSR.  The court's reasoning is plausible, the result defensible, and the record barren of anything suggestive of either procedural or substantive error.  Accordingly, we reject this assignment of error.

## C. **Disparity**.

We need not linger over the appellant's last claim. He asseverates that his sentence was substantively unreasonable because it was longer than the sentence meted out to a more culpable codefendant. This argument is hopeless.

Section 3553(a) encourages a sentencing court to consider, as a basis for ameliorating a prospective sentence, a perceived "need to avoid unwarranted sentence disparities among defendants with similar records." 18 U.S.C. § 3553(a)(6). In enacting this provision, Congress's concern was mainly with minimization of disparities among defendants nationally rather than with disparities among codefendants engaged in a common conspiracy. See Martin, 520 F.3d at 94; United States v. Navedo-Concepción, 450 F.3d 54, 60 (1st Cir. 2006); United States v. Smith, 445 F.3d 1, 5 (1st Cir. 2006).

At any rate, the appellant and the codefendant whom he identifies were not similarly situated. We have reviewed the material that the government has proffered under seal.[5] The facts disclosed satisfy us that the two men are not fair congeners. There were ample reasons to give the codefendant a shorter sentence — reasons that did not pertain to the appellant.

---

[5] The appellant has not impeached the veracity of that proffer, nor does he suggest that its contents were unknown to the sentencing judge.

## III.  CONCLUSION

We need go no further.  For the reasons elucidated above, we affirm the conviction and sentence.

**<u>Affirmed</u>**.