**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 21-1687

UNITED STATES OF AMERICA,

Appellee,

v.

GIOVANNI ORTIZ-SOTO, a/k/a Pinocho,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Montecalvo and Aframe,[*]
Circuit Judges.

Michael R. Hasse on brief for appellant.
W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Linet Suárez, Assistant United States Attorney, on brief for appellee.

---

[*] This case was submitted to a panel that initially included Judge Selya, who passed away while it was pending. The remaining two panelists therefore issued this opinion pursuant to 28 U.S.C. § 46(d).

May 1, 2025

**PER CURIAM**. Defendant-appellant Giovanni Ortiz-Soto ("Ortiz") was convicted of, among other things, conspiring to possess with intent to distribute a controlled substance within a protected location. For this offense, he received a downwardly variant sentence of 180 months' imprisonment. He now challenges this sentence, claiming that it is procedurally infirm and substantively unreasonable because the sentencing court failed adequately to explain it. Concluding that the sentencing court's explanation withstands scrutiny, we affirm.

**I**

We briefly recount the facts and procedural history of the case. "Where, as here, a sentencing appeal follows a guilty plea, we glean the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the record of the disposition hearing." United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009).

In 2017, a federal grand jury sitting in the District of Puerto Rico charged Ortiz and 103 alleged co-conspirators as participants in a drug-trafficking organization (DTO) led by the Los Menores gang. According to the indictment, Ortiz's participation in the DTO included being a leader, enforcer, and runner at the Los Jeannie Public Housing Project in Bayamón, Puerto Rico. In furtherance of his drug-trafficking activities, Ortiz

carried and used firearms and participated in the murder of three individuals.

After four years of pretrial developments (none of which are relevant here), Ortiz and the government reached an agreement. Ortiz agreed to plead guilty to two of the five charges set forth in the indictment: conspiracy to possess with intent to distribute a controlled substance within a protected location (count 1), 21 U.S.C. §§ 841(a)(1), 846, 860, and using and carrying a firearm during and in relation to a drug-trafficking crime (count 2), 18 U.S.C. § 924(c)(1)(A). For its part, the government agreed to move to dismiss both the remaining three counts in the indictment and additional charges stemming from an unrelated incident.

As pertinent here, the plea agreement set the tentative base offense level (BOL) at forty-three. See U.S.S.G. §§ 2A1.1(A), 2D1.1(d)(1). Following a three-level reduction for acceptance of responsibility, see U.S.S.G. § 3E1.1, the total offense level (TOL) was forty. The parties did not ascribe to Ortiz a particular guideline sentencing range (GSR) for count 1, but they noted that the GSR would be 292 to 365 months' imprisonment if the sentencing court determined that Ortiz's criminal history category (CHC) was I. As for count 2, the parties agreed that the GSR was "the minimum term of imprisonment required by statute" -- in this case, sixty months. See 18 U.S.C. § 924(c)(1)(A)(i); U.S.S.G. § 2K2.4(b). Both the government and Ortiz agreed to recommend a

downwardly variant sentence of 120 months' imprisonment on count 1 and a consecutive upwardly variant sentence of 120 months' imprisonment on count 2. But the parties recognized that the recommendations were just that -- recommendations -- and that those recommendations were not binding on the court.

In due season, the district court accepted Ortiz's guilty plea and ordered the preparation of a PSI Report. In it, the probation office recommended a BOL of forty-three for count 1. See U.S.S.G. §§ 2A1.1(A), 2D1.1(d)(1). It then added four levels because the criminal enterprise involved five or more participants and Ortiz was one of its organizers or leaders. See § 3B1.1(a). Following a three-level reduction for acceptance of responsibility, see § 3E1.1, the TOL was forty-four. Because TOLs exceeding forty-three are treated as being forty-three, the TOL here was capped at forty-three. See ch. 5, pt. A, cmt. n.2. The resultant GSR for count 1 was life imprisonment. As for count 2, the GSR was sixty months' imprisonment, that is, "the minimum term of imprisonment required by statute." See 18 U.S.C. § 924(c)(1)(A)(i); U.S.S.G. § 2K2.4(b). Ortiz did not advance any objections to the PSI Report.

The sentencing court held the disposition hearing on August 12, 2021. Ortiz argued for a downwardly variant sentence of 120 months' imprisonment on count 1 and an upwardly variant sentence of 120 months' imprisonment on count 2. In support, he

claimed that the offense conduct was caused by "his ignorance, lack of education, [manipulation] due to threats, and . . . poor judgement"; that he never actually shot anyone; and that he was a "totally different person" from the man who had committed the charged crimes. Adhering to the plea agreement, the government also recommended a 120-month prison sentence as to count 1 and a 120-month prison sentence as to count 2. But in doing so, the government insisted that the evidence showed that Ortiz had "shot and killed" three individuals, and that he had not "changed his life" since being indicted. Indeed -- as the government saw it -- Ortiz had violated conditions of supervised release on multiple occasions.

Following Ortiz's allocution, the sentencing court adopted the guideline calculations specified in the PSI Report. In its examination of the applicable sentencing factors, see 18 U.S.C. § 3553(a), the court considered and weighed (among other things) Ortiz's personal history and characteristics, the offenses of conviction, and relevant conduct. The court discussed Ortiz's age, education, prior employment, lack of mental illness, and substance-use history. It observed that -- as a leader -- Ortiz "controlled and supervised the drug trafficking activities" at the housing project. "As a runner, he was responsible for providing sufficient narcotics to the sellers," collecting drug-sale proceeds, and paying street sellers. He also recruited sellers

and runners, ensured that there were "sellers for every shift," supervised shifts, and maintained ledgers. Finally, the court noted that as an enforcer, Ortiz used and carried firearms in furtherance of his activities and had participated in the murders of three individuals.

Based on its evaluation of the § 3553(a) factors, the court concluded that the parties' recommendations "d[id] not reflect the seriousness of the offense, d[id] not promote respect for the law, d[id] not protect the public from further crimes by [Ortiz], and d[id] not address the issues of deterrence and punishment." In the end, the court determined that proper punishment would entail a downwardly variant sentence of 180 months' imprisonment on count 1 and an upwardly variant sentence of 120 months' imprisonment on count 2, to be served consecutively.[1] Neither party lodged any objections.

This timely appeal ensued.

## II

Before delving into Ortiz's appeal, we must correct a misnomer. At various times in his appellate briefing, Ortiz

---

[1] The transcript of the sentencing hearing reflects that the district court judge summed the respective sentences for counts 1 and 2 to be a "total of 320 months." However, the judgment entered on the docket indicates "Impr of 180 months as to count 1 and 120 months as to count 2 to be served consecutively to each other for a total term of 300 months." And both parties consistently refer to a total term of 300 months.

describes the sentence on count 1 as either an upward "departure" or an upward "variance."[2] These descriptions are erroneous. Because the deviation from the GSR was not based on factors absent from "the presentence report or . . . a party's prehearing submission," the sentence is not a departure. Fed. R. Crim. P. 32(h); see United States v. Fletcher, 56 F.4th 179, 187 (1st Cir. 2022) (contrasting departures and variances). And considering that the GSR applicable to count 1 was life imprisonment, any sentence for a term of years (including the 180-month sentence) would necessarily be a downwardly variant sentence. Cf. United States v. Jurado-Nazario, 979 F.3d 60, 62 (1st Cir. 2020) (stating that "[t]he starting point for a district court's sentencing determination 'is the guideline range, not the parties' recommendations.'" (quoting United States v. Cortés-Medina, 819 F.3d 566, 573 (1st Cir. 2016))). So, in fact, although he does not frame his argument in this way, Ortiz effectively contends that the district court imposed a downwardly variant sentence that did not vary far enough.

---

[2] We know that Ortiz is characterizing the sentence on count 1 (as opposed to his sentence on count 2) as upwardly variant because -- throughout his briefing -- he opposes the imposition of an upwardly variant sentence in relation to the sentence that the parties recommended, not the GSR. In other words, Ortiz characterizes the sentence on count 1 as upwardly variant because it is sixty months over the sentence recommended by the parties.

With this correction in tow, we turn to the substance of Ortiz's appeal. Before us, Ortiz contends that the sentencing court erred by imposing a sentence on count 1 that was both procedurally infirm and substantively unreasonable.[3] We appraise each contention in turn, mindful that "[a]ppellate review of claims of sentencing error entails a two-step pavane." United States v. Matos-de-Jesús, 856 F.3d 174, 177 (1st Cir. 2017).

**A**

We begin with Ortiz's claim of procedural error. See United States v. Melendez-Rosado, 57 F.4th 32, 37 (1st Cir. 2023). Here, Ortiz insists that the sentencing court erred by failing to adequately justify the sentence it imposed.

Our review, however, is only for plain error, as Ortiz did not advance this claim below. See United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). "Review for plain error entails four showings: (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Id. "The plain error hurdle is high." United States v. Hunnewell, 891 F.2d 955,

---

[3] Although Ortiz does not precisely identify which sentence he challenges on appeal, his arguments focus on the sentence imposed on count 1. Thus, this is the sentence we examine here.

956 (1st Cir. 1989). And Ortiz is unable to clear that hurdle here because he cannot show that any error occurred.

In sentencing, a district court is statutorily required to "state in open court the reasons for its imposition of [a] particular sentence." 18 U.S.C. § 3553(c); see United States v. Ruiz-Huertas, 792 F.3d 223, 227 (1st Cir. 2015). This requirement is meant "to allow for meaningful appellate review and to promote the perception of fair sentencing." Gall v. United States, 552 U.S. 38, 50 (2007) (stating that "[t]he Guidelines are the starting point and the initial benchmark" for determining a defendant's sentence). These objectives, though, do not impose on a sentencing court an obligation to provide an explanation that is "precise to the point of pedantry." United States v. Turbides-Leonardo, 468 F.3d 34, 40 (1st Cir. 2006). Nor do they require the court to explain why it "chose a sentence different from the parties' joint recommendation . . . ." United States v. Turner, 124 F.4th 69, 81 (1st Cir. 2024). Instead, the court need only "identify the main factors driving its [sentencing] determination." United States v. Sepúlveda-Hernández, 817 F.3d 30, 33 (1st Cir. 2016).

In the case at hand, we are easily able to discern the sentencing court's rationale for declining to impose a more downwardly variant sentence on count 1. Cf. Sepúlveda-Hernández, 817 F.3d at 33 (noting that reviewing court may deduce sentencing court's rationale "by comparing the parties' arguments at

sentencing with the court's actions"). After reviewing the parties' sentencing memoranda, giving the parties an opportunity to argue for particular sentences, and determining the appropriate GSR for each offense of conviction, the court turned to its consideration of the § 3553(a) factors. It considered Ortiz's personal history and characteristics and his roles in the offenses of conviction. See 18 U.S.C. § 3553(a)(1). The court observed that Ortiz was a leader, enforcer, and runner for a DTO at a particular housing project. And it described how that participation furthered the DTO's drug-distribution enterprise -- that is, the conspiracy to distribute cocaine and prescription pills at the housing project. The court also noted that Ortiz carried firearms and employed them in furtherance of the enterprise's goals.

Having considered and weighed the § 3553(a) factors, the court concluded that the 120-month prison sentence recommended by the parties on count 1 "d[id] not reflect the seriousness of the offense, d[id] not promote respect for the law, d[id] not protect the public from further crimes by [Ortiz], and d[id] not address the issues of deterrence and punishment." Instead, the court determined that a 180-month prison term on count 1 was appropriate punishment. The court's evident weighing of the § 3553(a) factors and its view of the parties' recommendation provides a sufficient explanation for the sentence it imposed. That explanation permits

meaningful appellate review, and it evidences fair sentencing. See Gall, 552 U.S. at 50.

To be sure, Ortiz identifies several alleged errors in the sentencing court's explanation of his sentence on count 1. First, he faults the court for reciting his offense conduct because, he says, that factual predicate was already considered in the plea agreement and the calculation of the GSR. The offense conduct, though, is a critical spoke in the determination of a defendant's sentence, and it is a factor considered at every stage of sentencing, from the filing of the sentencing memorandum to the calculation of the GSR to the pronouncement of sentence. See 18 U.S.C. § 3553(a)(1). The court did not abuse its discretion in reciting and weighing the factual predicate at sentencing. See id.

Next, Ortiz faults the court for "emphasizing" his criminal history because that history was already accounted for in the calculation of his CHC. Ortiz's characterization is inaccurate. At sentencing, the court did not "emphasiz[e]" Ortiz's criminal history but, rather, recited it just before calculating Ortiz's TOL and CHC for count 1. Simply reciting Ortiz's criminal history was not erroneous.[4] See United States v. Díaz-Lugo, 963

---

[4] Ortiz alleges that the sentencing court "somewhat mischaracteriz[ed] an offense" that resulted in an arrest but for which no probable cause was found. Assuming (for argument's sake) that the offense was mischaracterized, though, there is simply no

F.3d 145, 154, 156 (1st Cir. 2020) (explaining that sentencing court may "construct[] a chronology of the [defendant's] criminal history" and "lean[] [on it] heavily").

Ortiz also faults the court for failing to distinguish his case from the mine-run. In support, he cites United States v. Rivera-Berríos, 968 F.3d 130 (1st Cir. 2020), for the proposition that an upwardly variant sentence must be accompanied by an explanation that is commensurate with the extent of the deviation. See id. at 134-35. In Rivera-Berríos, though, we vacated a sentence twelve months over the applicable GSR because the court identified a machine gun as the "driving force behind the upward variance," the machine gun was fully accounted for in the sentencing guidelines, the court did not identify any other aggravating circumstances, and our review of the record disclosed none. See id. at 135. And in any case, the district court here did not impose an upwardly variant sentence. Thus, Rivera-Berríos is inapposite.

Finally, Ortiz describes the sentencing court's explanation as being "ungrounded," "overly generic," and "unmoored from any individual characteristics of the offense or the offender." But as we have explained, our review of the record

---

indication that the court assigned that offense any weight in its calculation. Seen in context, it is clear that the court merely mentioned the arrest -- which Ortiz does not dispute -- as part of its recitation of Ortiz's criminal history.

does not bear out these characterizations. The sentencing court adequately considered the § 3553(a) factors and laid out the reasons why it determined that a downwardly variant sentence on count 1 was appropriate.

That ends this aspect of the matter. Because Ortiz is unable to show that the court committed any error -- much less plain error -- in its explanation of the sentence it imposed, he is unable to prevail on plain-error review. His claim of procedural error, therefore, fails.

**B**

We turn last to Ortiz's claim that the downwardly variant sentence on count 1 is substantively unreasonable. See Melendez-Rosado, 57 F.4th at 37. Ortiz contends that the sentencing court erred by imposing a sentence with no "plausible rationale." Once again, we are not persuaded.

We review this claim of error for abuse of discretion. See Holguin-Hernandez v. United States, 589 U.S. 169, 174-75 (2020). "The touchstone of abuse of discretion review in federal sentencing is reasonableness." United States v. Vargas-Dávila, 649 F.3d 129, 130 (1st Cir. 2011). "In the sentencing context, 'reasonableness is a protean concept.'" United States v. Clogston, 662 F.3d 588, 592-93 (1st Cir. 2011) (quoting United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008)). As such, "[t]here is no one reasonable sentence in any given case but, rather, a universe

of reasonable sentencing outcomes."  Id.  So long as a sentence "rests on 'a plausible rationale and . . . represents a defensible result," that sentence will be deemed to fall within the universe of reasonable sentencing outcomes.  United States v. Concepcion-Guliam, 62 F.4th 26, 36 (1st Cir. 2023), cert. denied, 144 S. Ct. 171 (2023) (quoting United States v. Rivera-Morales, 961 F.3d 1, 21 (1st Cir. 2020)).

"[W]hen -- as in this case -- a defendant challenges a downwardly variant sentence, he must carry a particularly heavy burden to show that the length of the sentence imposed is unreasonable."  Id.; see United States v. MacVicar, 96 F.4th 51, 57 (1st Cir. 2024).  Ortiz here cannot shoulder that burden.  We explain briefly.

We have repeatedly observed that a plausible rationale for a given sentence and an adequate explanation for that sentence are "almost always two sides of the same coin."  United States v. Centariczki, 98 F.4th 381, 385 n.1 (1st Cir. 2024) (quoting United States v. Valle-Colón, 21 F.4th 44, 50 (1st Cir. 2021)); see United States v. Leach, 89 F.4th 189, 198 (1st Cir. 2023).  So it is here. As we explained in examining the procedural reasonableness of the sentence on count 1, the sentencing court adequately explained its choice of a downward variance, and that explanation constitutes a plausible rationale for the same reasons set forth above.  We accordingly discern no substantive unreasonableness.

**IV**

For the foregoing reasons, the sentences are **<u>affirmed</u>**.