# United States Court of Appeals
## For the First Circuit

No. 21-1721

UNITED STATES OF AMERICA,

Appellee,

v.

JULIANIE RIJOS-RIVERA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Pedro A. Delgado-Hernández, U.S. District Judge]

Before

Barron, Chief Judge,
Selya and Kayatta, Circuit Judges.

Philip R. Horowitz on brief for appellant.
W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Francisco A. Besosa-Martínez, Assistant United States Attorney, on brief for appellee.

November 21, 2022

**SELYA**, **Circuit Judge**.   In this sentencing appeal, defendant-appellant Julianie Rijos-Rivera challenges the procedural and substantive reasonableness of her 108-month prison sentence.   Concluding, as we do, that the defendant's complaint about the applicability of a four-level abduction enhancement cannot withstand scrutiny and that the challenged sentence falls within the broad universe of reasonable outcomes, we affirm.

**I**

We briefly rehearse the relevant facts and travel of the case.   "Where, as here, a sentencing appeal follows a guilty plea, we glean the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the record of the disposition hearing."   United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009).

In the early hours of August 24, 2019, the defendant's live-in boyfriend, Randy Rivera-Nevarez (Rivera), called the defendant and told her that he and an associate, Domingo Emanuel Bruno-Cotto (Bruno), "had just made a hit on an Uber Driver."   He also boasted that "they had the individual (victim) with them . . . withdrawing money from the victim's account."   That conversation ended with the defendant telling Rivera that she would see him at home.

The next day, Rivera asked the defendant "to take him on a ride."   Understanding Rivera to be bent on carrying out a

robbery, the defendant nonetheless agreed to Rivera's request. The pair then set out in a Ford Explorer that Rivera and Bruno had previously carjacked. After Bruno joined them, the trio made their way to a public beach in Dorado, Puerto Rico. On their way, they stopped at a gas station where Bruno bought condoms. According to the defendant, Bruno stated "that he purchased the condoms because he was desperate to make a hit on a woman and bone her."

Once they arrived at the beach's parking lot, Rivera told the defendant to wait in the car. The defendant saw both men exit the vehicle carrying firearms and make their way to the beach. Once there, the two men proceeded to rob a young man and woman. During the robbery, they sprayed mace on the man, moved the woman to a different location on the beach, and sexually assaulted her. At one point, the woman was taken by one of the men to her vehicle (a Jeep Cherokee) to retrieve a debit/credit card.

Roughly thirty minutes after leaving the Ford Explorer, Rivera returned. He told the defendant that Bruno was "'sticking it into' the woman (referring to a sexual act)." Rivera then returned to the beach, and the defendant continued to wait in the car.

Later, Rivera and Bruno came back to the parking lot and drove off in the Jeep Cherokee. The defendant took the same route, driving the Ford Explorer. Both vehicles stopped at a gas station, where the two men transferred items from the Jeep Cherokee to the

Ford Explorer. Bruno then gave the defendant the debit/credit card along with the woman's PIN number, telling the defendant "to withdraw everything she could." The defendant went to an ATM and withdrew money from the woman's account. Two days later, the defendant was arrested.

In due course, a federal grand jury sitting in the District of Puerto Rico charged the defendant with one count of carjacking resulting in serious bodily injury. See 18 U.S.C. § 2119. Although the defendant initially maintained her innocence, she subsequently entered a guilty plea. The district court accepted her change of plea and ordered the preparation of a PSI Report.

In the PSI Report, the probation office recommended several sentencing enhancements, including a four-level enhancement for abduction in order to facilitate the commission of the offense of conviction. See USSG §2B3.1(b)(4)(A). The defendant objected to the abduction enhancement on the ground that her participation in the offense was "limited." The probation office, however, held firm. Based on a total offense level of thirty-one and a criminal history category of I, the PSI Report recommended a guideline sentencing range of 108 to 135 months.

At the disposition hearing, the district court heard argument from both parties. Pursuant to the plea agreement, the government recommended a sentence of seventy months' imprisonment.

Defense counsel joined in this recommendation, but again objected to the abduction enhancement "in light of the evidence and in light of the role of the defendant." The court made clear that it agreed with the probation office on that point.

After hearing the defendant's allocution, the court adopted the guideline calculations limned in the PSI Report. The court noted that because "the female victim was moved multiple times on the beach . . . taken by one of the assailants to the Jeep Cherokee, and she was moved against her will to facilitate the commission of the offense, a four-level increase is warranted." The court then denied the defendant's request for a mitigating-role adjustment, see USSG §3B1.2, because the defendant possessed "previous knowledge of the car-jacking crimes committed by her co-defendants, that she drove the vehicle used to commit the offense and knew that it had also been car-jacked and [Bruno had] expressed to her his intent of committing a rape prior to the offense."

The court proceeded to weigh the sentencing factors adumbrated in 18 U.S.C. § 3553(a). It considered, among other things, the defendant's age, family history, education, physical and mental health, prior drug use, and the offense of conviction. In the court's view, the seventy-month recommended "sentence would fail to provide just punishment and address the harm caused." Instead, the court imposed a 108-month term of immurement, stating that "[t]his is the sentence the Court would have imposed,

irrespective of the guideline, based on the facts I reviewed." The sentence imposed was at the bottom of the guideline sentencing range for the offense of conviction.

This timely appeal followed.

## II

"Appellate review of claims of sentencing error entails a two-step pavane." United States v. Matos-de-Jesús, 856 F.3d 174, 177 (1st Cir. 2017). Under this bifurcated methodology, we first assess any claims of procedural error. See id. If the sentence is procedurally sound, we then assess any claim of substantive unreasonableness. See id. The defendant presses both types of claims, and we treat them separately.

## A

We start with the defendant's claim of procedural error. This claim centers on the district court's imposition of a four-level abduction enhancement under USSG §2B3.1(b)(4)(A). Specifically, the defendant contends that this enhancement was inapposite because the abduction was not reasonably foreseeable to her and that, in any event, the district court did not make an individualized determination with respect to foreseeability.

The parties clash over whether this claim of error was sufficiently raised below. This clash affects the applicable standard of review: preserved claims of sentencing error are reviewed for abuse of discretion. See United States v. Vélez-

<u>Andino</u>, 12 F.4th 105, 112 (1st Cir. 2021). Unpreserved claims of sentencing error, though, are reviewed only for plain error. <u>See</u> <u>id.</u> at 112-13; <u>United States</u> v. <u>Duarte</u>, 246 F.3d 56, 60 (1st Cir. 2001). In this instance, we need not resolve the parties' clash over what standard of review applies. Even if we assume, favorably to the defendant, that review is for abuse of discretion, the defendant's claim of error founders.

"The abuse of discretion standard is not monolithic but, rather, encompasses 'de novo review of abstract questions of law, clear error review of findings of fact, and deferential review of judgment calls.'" <u>United States</u> v. <u>Padilla-Galarza</u>, 990 F.3d 60, 73 (1st Cir. 2021) (quoting <u>United States</u> v. <u>Lewis</u>, 517 F.3d 20, 24 (1st Cir. 2008)). In applying this nuanced standard here, we begin with the text of the enhancement itself.

The abduction enhancement calls for a four-level increase in the defendant's base offense level when, as relevant in this case, "any person was abducted to facilitate commission of the offense." USSG §2B3.1(b)(4)(A). The offense of conviction in this case was carjacking, but robbery was part and parcel of that offense (indeed, its raison d'être). The background note to section 2B3.1 makes pellucid that this guideline provision applies "for robberies where a victim was forced to accompany the defendant to another location. . . ." <u>Id.</u> cmt. background.

The defendant does not dispute that this guideline controls.[1] Nor does she dispute that a woman was abducted by one of her confederates: Bruno and/or Rivera forced the woman to move to a different location (the Jeep Cherokee) to retrieve the debit/credit card and, thus, to facilitate the commission of the robbery. The question, then, reduces to whether her confederates' perpetration of the abduction can reasonably be attributed to her.

In the case of jointly undertaken criminal activity, a defendant is liable both for harm resulting from any acts or omissions directly attributable to her and for harm resulting from the acts or omissions of other persons acting in concert with her that were "reasonably foreseeable in connection with th[e] criminal activity." USSG §1B1.3(a)(1)(B)(iii). As with all upward sentencing adjustments, the government bears the burden of proving the applicability of this enhancement by a preponderance of the evidence. See United States v. Soto-Villar, 40 F.4th 27, 35 (1st

---

[1] We need not linger long over the defendant's suggestion that she and the government "agreed" that the abduction enhancement "did not apply." In support, she notes only that the enhancement was not mentioned in the plea agreement. There is, however, nothing to show either that the plea agreement was conditioned upon the denial of the abduction enhancement or that the government affirmatively agreed to oppose such an enhancement. The mere fact that a plea agreement is silent concerning a possible enhancement, without more, does not foreclose a sentencing court from exploring and applying such an enhancement. See United States v. Trujillo, 537 F.3d 1195, 1201 (10th Cir. 2008) (stating that a "plea agreement cannot preclude the court from considering the facts underlying" relevant conduct when considering application of enhancement not endorsed in plea agreement).

Cir. 2022); United States v. Flores-De-Jesús, 569 F.3d 8, 36 (1st Cir. 2009).

As a general matter, we deem the Sentencing Commission's commentary to the sentencing guidelines to be authoritative. See United States v. Rivera-Berríos, 902 F.3d 20, 24-25 (1st Cir. 2018). The commentary to section 1B1.3 outlines how a sentencing court ought to make an individualized determination as to whether another person's act, committed in furtherance of jointly undertaken criminal activity, was reasonably foreseeable to the defendant. "[T]he court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake." USSG §1B1.3, cmt. n.3(B). Then, "[t]he court must determine if the conduct . . . of others was in furtherance of the jointly undertaken criminal activity." Id. cmt. n.3(C). Finally, "[t]he court must . . . determine if the conduct . . . was reasonably foreseeable in connection with that criminal activity." Id. cmt. n.3(D).

Before us, the defendant contends that the district court abused its discretion by not employing this tripartite framework in making an individualized determination. The defendant's premise is borne out by the record: the district court did not employ the tripartite framework (at least in so many words). But the district court, in effect, covered the same ground. We think that its findings were sufficiently explicit to

warrant a conclusion that the court did not abuse its discretion in imposing the enhancement. We explain briefly.

Despite the district court's eschewal of the tripartite framework, the court's factfinding (including its adoption of the PSI Report's account of the offense of conviction) fully supports findings to the effect that the robbery was within the scope of the jointly undertaken criminal activity; that the conduct of Bruno and/or Rivera in abducting the victim was in furtherance of that activity; and that such conduct was reasonably foreseeable to the defendant. The defendant does not dispute that the record supports both the "scope" and the "in furtherance of" elements of the tripartite framework. Rather, she takes aim at the third element.

With respect to that element, the court found — and the defendant does not contest — that the defendant agreed to go along with Rivera and Bruno to commit a robbery. She joined in that criminal enterprise knowing that Rivera and Bruno had carjacked a vehicle and abducted a man to retrieve money from an ATM the night before. In the course of committing the new carjacking and robbery, Bruno and/or Rivera abducted a woman, forcing her to go to her car and retrieve a debit/credit card and divulge her PIN number. Given the defendant's knowledge of what had gone before and the nature and circumstances of the offense of conviction, the record strongly supports a finding that the abduction was

reasonably foreseeable to the defendant.[2]  So viewed, application of the abduction enhancement was appropriate, and the defendant cannot succeed in showing that the district court abused its discretion in imposing the enhancement.

We add a coda.  "[W]e have consistently held that when a sentencing court makes clear that it would have entered the same sentence regardless of the Guidelines, any error in the court's Guidelines calculation is harmless."  United States v. Ouellette, 985 F.3d 107, 110 (1st Cir. 2021).  Here, the sentencing court explicitly stated that it would impose the same 108-month sentence without regard to the sentencing guidelines.  Given this statement, any error in the guideline calculations would be harmless in view of the evident basis in the record for a finding that the defendant's relevant conduct warranted a sentence of that length regardless of whether the abduction enhancement applied.  See id.

**B**

This leaves the defendant's challenge to the substantive reasonableness of her sentence.  Our review is for abuse of

---

[2] For present purposes, it is enough that the abduction during the commission of the carjacking and robbery was reasonably foreseeable to the defendant.  In the interest of completeness, however, we add that the defendant's knowledge that Bruno wanted to commit a rape arguably expanded the scope of the criminal enterprise to include rape.  Because the defendant knew that Bruno wanted to rape a woman that night and that he had stopped to purchase condoms along the way, it was also reasonably foreseeable to her that a woman would be abducted for that purpose.

- 11 -

discretion. See Holguin-Hernandez v. United States, 140 S. Ct. 762, 766-67 (2020).

In sentencing, "reasonableness is a protean concept." United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008). As such, "[t]here is no one reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes." United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011). When determining whether a challenged sentence is substantively reasonable, we ask "whether the sentence falls within this broad universe." United States v. Rivera-Morales, 961 F.3d 1, 21 (1st Cir. 2020). In the end, a sentence will be deemed substantively reasonable as long as it rests on "a plausible rationale and . . . represents a defensible result." Id.

The defendant's sentence was at the bottom of — but within — the guideline sentencing range. Where, as here, a defendant challenges a within-the-range sentence, she "faces a steep uphill climb to show that the length of the sentence is unreasonable." United States v. deJesús, 6 F.4th 141, 150 (1st Cir. 2021).

In our view, the sentence here rests on a plausible rationale. The district court mulled the section 3553(a) factors and determined that "the facts in this case are predominantly heinous in setting it apart from the typical car-jacking case." The court emphasized that what stood out most to it were "the

defendant's prior knowledge of the car-jacking being committed by the co-defendants . . . and her knowledge of [Bruno's] intent of committing rape on the night of the events." The court found "chilling" the defendant's lack of reaction on the night of the offense and found that she lacked empathy for the victims during sentencing. This rationale easily passes the test of plausibility for a bottom-of-the-range sentence.

So, too, the challenged sentence represents a defensible result. The defendant was a willing participant in a carjacking/robbery offense. She knew that her confederates carried firearms and that Bruno wanted to rape a woman. As we have explained, the defendant was complicit in the carjacking, the robbery, and the rape. See supra Part II(A) & n.2. Given the totality of the circumstances, it would strain credulity to conclude that a 108-month sentence is indefensible.

This conclusion is not undermined by the fact that both the government and the defendant, pursuant to the plea agreement, urged the district court to impose a seventy-month term of immurement. The customary rule is that the district court is not bound by the parties' recommendations as to the length of the sentence to be imposed, see United States v. Mulero-Vargas, 24 F.4th 754, 759 (1st Cir. 2022), and this case falls squarely within the sweep of that customary rule.

That ends this aspect of the matter.  When — as in this case — a sentence rests on a plausible rationale and reflects a defensible result, that sentence is substantively reasonable.  The defendant's claim of error therefore fails.

### III

We need go no further.  For the reasons elucidated above, the challenged sentence is

**Affirmed**.