20-2655
*United States v. Wynn*

# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2021

No. 20-2655

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

RASHAWN WYNN, FKA SEALED DEFENDANT #9, WORMY,
*Defendant-Appellant.*[*]

―――――――――

On Appeal from the United States District Court
for the Northern District of New York
Frederick J. Scullin, Jr., *Judge.*

―――――――――

ARGUED: OCTOBER 20, 2021
DECIDED: JUNE 15, 2022

―――――――――

―――――――――

[*] The Clerk of Court is respectfully directed to amend the official caption as set forth above.

Before: CALABRESI and POOLER, *Circuit Judges*, and KORMAN, *District Judge*.[**]

---

Appeal from a judgment of the United States District Court for the Northern District of New York (Scullin, Jr., *J.*) entered upon a plea of guilty convicting Rashawn Wynn for conspiring to engage in a pattern of racketeering activity, in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d). Wynn argues that the district judge erred by applying a two-level dangerous weapons increase to his Guidelines offense level. Wynn also argues he was entitled to a mitigating role adjustment to his offense level due to his limited role in the racketeering enterprise. We reject Wynn's first argument but conclude that the district court did not adequately explain its decision to deny Wynn a mitigating role adjustment. We therefore vacate Wynn's sentence and remand for resentencing.

VACATED AND REMANDED.

---

ALBERT J. MILLUS, JR., ESQ., Hinman, Howard & Kattell, LLP, Binghamton, New York, *for Defendant-Appellant.*

NICOLAS COMMANDEUR, Assistant United States Attorney, *for* Antoinette Bacon, Acting United States Attorney for the Northern District of New York, Syracuse, New York, *for Appellee.*

---

[**] Judge Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

KORMAN, *District Judge*:

Rashawn Wynn was convicted, pursuant to a guilty plea, of conspiracy to engage in a pattern of racketeering activity, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d). The charge was based on his membership in the Syracuse-based 110 Gang and, more specifically, his distribution, in five separate transactions, of a total of 42.2 grams of cocaine base ("crack cocaine"). Wynn apparently received less than $2500 for these sales, which ultimately resulted in a sentence of ninety-two months' imprisonment—the low end of the Sentencing Guidelines range the district judge calculated.

On appeal, Wynn challenges two factors upon which his sentence was based: (1) the district judge's decision to apply a two-level increase for possession of a dangerous weapon in connection with narcotics distribution, *see* U.S.S.G. § 2D1.1(b)(1), and (2) the district judge's refusal to apply a mitigating role adjustment, *see* U.S.S.G. § 3B1.2. Because Wynn does not argue that he could not reasonably foresee other 110 Gang members' possession of firearms, we reject his first challenge. Nevertheless, we find

3

merit in his second. Wynn's conviction and sentence stem from his role in furthering the 110 Gang's violent and extensive criminal enterprise. Yet the district judge failed to analyze Wynn's criminal conduct against the backdrop of the criminal conduct of other 110 Gang members even though such an analysis might well have qualified Wynn for a mitigating role adjustment.

## BACKGROUND

The 110 Gang operated a violent and extensive criminal enterprise in a specifically defined exclusive multiblock area in Syracuse, New York beginning in at least 2012. The gang's activities included a drug distribution business supported by violence, including the use of firearms, and theft accomplished through counterfeit credit cards. The gang also engaged in violence unconnected to its drug business. In all, gang members other than Wynn committed at least ten shootings and two stabbing attempts during the indictment period, which covered 2012 through 2018.

In his plea agreement, Wynn admitted that he was a member of the 110 Gang from at least 2012 through October 2018, that he sold 42.2 grams

4

of crack cocaine, in five transactions, and that he "was able to possess and distribute" that cocaine "[b]y virtue of his membership in the 110 Gang." App'x 56-57**.** Wynn, however, did not allocute to engaging in the gang's most serious conduct. The U.S. Attorney acknowledged at Wynn's plea allocution that he would have been prepared to prove only that Wynn carried out the five crack cocaine sales recounted in the plea agreement. There was no evidence that Wynn either engaged in any of the gang's violent activities and financial crimes or that he played a role in coordinating any aspect of the gang's operations. The drug transactions he completed all took place within one seven-month period and apparently produced less than $2500. Indeed, Wynn was incarcerated for four years of the six-year period covered by the RICO conspiracy alleged in the indictment.

The PSR, though, did not limit itself to a discussion of Wynn's criminal activity. Instead, it listed each of the 110 Gang's thirty-eight overt acts alleged in the indictment and prefaced that list with a ten-page overview discussing the nature and extent of the 110 Gang's criminal enterprise. Notably, Wynn's name did not appear once in that prefatory narrative.

Probation calculated a Guidelines base offense level of 24. It then increased that calculation by two levels pursuant to Guidelines section 2D1.1(b)(1) because the evidence showed that "110 gang members routinely possessed and used firearms in furtherance of their criminal activities including the distribution of crack cocaine within their territory." Wynn's offense level was then reduced by three levels because of his acceptance of responsibility and timely guilty plea, leading to a total offense level of 23. When combined with Wynn's criminal history category of VI, that offense level produced a Guidelines recommended range of 92 to 115 months' imprisonment.

Wynn raised two objections to Probation's calculations, that: (1) the two-level weapons enhancement was unwarranted because he did not possess a dangerous weapon in connection with the charged offense; and (2) he should receive "at least a two-point reduction based on his minor role in the offense" pursuant to Guidelines section 3B1.2. At sentencing, the district judge (Scullin, Jr., *J.*) rejected Wynn's arguments and "accept[ed] and adopt[ed] the factual information . . . as well as the calculations" in the PSR.

6

App'x at 126. He explained the weapons enhancement applied because it was "pretty clear . . . that members of the 110 gang were involved with weapons . . . they called community guns" and, "as part of [Wynn's] membership [in] the 110 gang, [he is] responsible for actions [other gang members] take . . . that further[] the criminal conspiracy" even if he was not "personally there." App'x at 125-127. The district judge denied Wynn's request for a role reduction reasoning that "it's pretty clear that [Wynn] was also a long-time member of the 110 gang . . . [a]nd I cannot find that [Wynn is] less culpable than anybody else that was involved in this conspiracy—or the organization here." App'x at 125. The district judge sentenced Wynn principally to 92 months' imprisonment. This appeal followed.

## ANALYSIS

"This Court reviews a district court's application of the Guidelines *de novo*, while factual determinations underlying a district court's Guidelines calculation are reviewed for clear error." *United States v. Cramer*, 777 F.3d 597, 601 (2d Cir. 2015). "A finding of fact is clearly erroneous only if, after reviewing all of the evidence, this Court is left 'with the definite and firm

7

conviction that a mistake has been committed.'" *Id.* (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985). We address each of Wynn's arguments in turn.

## I. The Dangerous Weapon Enhancement

"For a defendant convicted of a RICO offense in violation of 18 U.S.C. § 1962, the Guidelines base offense level is the higher of 19 or the offense level that would be applicable to the defendant's underlying racketeering activities." *United States v. Miller*, 116 F.3d 641, 677 (2d Cir. 1997) (citing U.S.S.G. § 2E1.1)). In this case, the latter alternative applied. Wynn's "underlying racketeering activity" consisted of selling 42.2 grams of crack cocaine. U.S.S.G. § 2E1.1(a)(2). Guidelines section 2D1.1, which prescribes "the offense level applicable to" such a narcotics offense, *id.* § 2E1.1(a)(2), provides a base offense level of 24 for Wynn's actions. *Id.* § 2D1.1(a)(5), (c)(8). On that much the parties agree.

But Wynn disputes the district judge's decision to adopt the PSR's recommendation to add two levels to his offense level pursuant to section 2D1.1(b)(1), which calls for such an increase "[i]f a dangerous weapon

(including a firearm) was possessed" in connection with the narcotics offense. *Id.* § 2D1.1(b)(1). While Wynn admitted that 110 Gang members used firearms to police their territory and facilitate the gang's drug trade, he argues that section 2D1.1(b)(1)'s increase cannot apply to him because "[t]here is no evidence . . . that [he] was involved in any [gang-related] gun activity" or "that [he] was aware of the use of firearms by the 110 Gang members."

As the district judge recognized, however, when a defendant traffics narcotics as part of a larger "narcotics conspiracy" that employs dangerous weapons "in furtherance of the conspiracy," "the defendant need not have had personal possession, or even actual knowledge of the weapon's presence" in order to compel the application of section 2D1.1(b)(1)'s enhancement. *United States v. Batista*, 684 F.3d 333, 343 (2d Cir. 2012) (quotation marks and alterations omitted). Rather, in such a case, "the enhancement is required so long as the possession of the firearm was reasonably foreseeable to the defendant." *Id.* (quotation marks omitted); *see* U.S.S.G. § 1B1.3(a)(1)(B).

9

While the district judge never explicitly found that other 110 Gang members' "possession of . . . firearm[s] was reasonably foreseeable to" Wynn, *Batista*, 684 F.3d at 343, the PSR so concluded, and the district judge "adopt[ed] the [PSR] without change." Wynn neither objected to the PSR's foreseeability conclusion before the district judge nor challenged it on appeal. We thus have no occasion to disturb that conclusion.

## II.    The Mitigating Role Adjustment

Wynn next argues that the district judge erred by rejecting his request, pursuant to Guidelines section 3B1.2, to reduce his offense level due to his limited role in the 110 Gang's criminal enterprise. "The defendant bears the burden of establishing by a preponderance of the evidence that he is entitled to a mitigating role adjustment under section 3B1.2." *United States v. Carpenter*, 252 F.3d 230, 234 (2d Cir. 2001).

### A.    The Governing Framework

Guidelines section 3B1.2 provides for "mitigating role" adjustments to a defendant's offense level "[b]ased on the defendant's role in the offense." U.S.S.G. § 3B1.2. Eligibility for a such an adjustment depends on "the

10

defendant's relative culpability [with] reference to his or her co-participants in the case at hand." *United States v. Alston*, 899 F.3d 135, 149 (2d Cir. 2018) (quotation marks and emphasis omitted). The Guidelines specify five "non-exhaustive . . . factors" a "court should consider" in determining a defendant's relative culpability:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity; (ii) the degree to which the defendant participated in planning or organizing the criminal activity; (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; (v) the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2 application note 3(C). The Guidelines also provide that even "a defendant [who] performs an essential or indispensable role in the criminal activity . . . may receive a[] [mitigating role] adjustment." *Id.*

When a defendant, like Wynn, is sentenced for a RICO conviction, his "role adjustment is to be made on the basis of [his] role in the overall RICO enterprise." *United States v. Ivezaj*, 568 F.3d 88, 99 (2d Cir. 2009). Although

11

*Ivezaj* concerned the application of an *aggravating* role adjustment (provided by Guidelines section 3B1.1) as opposed to the *mitigating* role adjustment (provided by Guidelines section 3B1.2) at issue here, we explained that "the language of the Guidelines [in section 2E1.1] is clear that the requirement to look at each individual act in a RICO offense is only for the purpose of establishing the base level offense, not for applying the Chapter Three adjustments." *Id.* Thus, *Ivezaj* requires that mitigating role determinations for defendants adjudicated guilty of RICO violations "be made on the basis of the defendant's role in the overall RICO enterprise." *Id.*; *see also United States v. Gershman*, 31 F.4th 80, 104-06 (2d Cir. 2022) (reaffirming *Ivezaj*'s approach for the application of Chapter Three adjustments in the RICO context).

### B. <u>Application</u>

The district judge properly focused on Wynn's "relative culpability [with] reference to his . . . co-participants," *Alston*, 899 F.3d at 149, in the 110 Gang's "overall RICO enterprise." *Ivezaj*, 568 F.3d at 99. His analysis, however, was unduly perfunctory. The only reasoning the district judge

12

provided for his dispositive inability to "find that [Wynn was] less culpable than anybody else that was involved in [the 110 Gang's] conspiracy" was that the evidence established that Wynn was "a long-time member of the 110 gang." App'x 125. The U.S. Attorney repeats this finding on appeal, adding that Wynn "posted 110 Gang references to social media and appeared in a rap video glorifying the gang where he flashed 110 Gang hand signs." Yet Wynn's documented and sustained association with the 110 Gang is probative of at most one of the Guidelines factors relevant to the mitigating role determination—"the degree to which the defendant understood the scope and structure of the criminal activity." U.S.S.G. § 3B1.2 application note 3(C). The district judge's decision lacks any analysis of the other relevant mitigating role factors that the Guidelines provide.

Because the record suggests that other, seemingly unconsidered, mitigating role factors favor Wynn, we vacate Wynn's sentence. "A district court commits procedural error . . . if it fails adequately to explain its chosen sentence." *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008). "Although a judge need not utter robotic incantations repeating each factor that

13

motivates a sentence, the judge must explain enough about the sentence for a reviewing court both to understand it and to assure itself that the judge considered the principles enunciated in federal statutes and the Guidelines." *United States v. Park*, 758 F.3d 193, 197 (2d Cir. 2014) (alterations adopted and internal quotation marks omitted). In this case, Wynn presented a strong argument for a mitigating role adjustment such that the district judge's cursory denial does not sufficiently substantiate his decision.

As discussed, the district judge implicitly observed that the evidence suggested that Wynn "understood the scope and structure of the criminal activity" to a significant "degree." U.S.S.G. § 3B1.2 application note 3(C). The record, however, indicates that three of the remaining four mitigating role factors in fact counsel *in favor* of granting Wynn a role adjustment. No record evidence suggests that Wynn "participated in planning or organizing the [110 Gang's] criminal activity," or "exercised decision-making authority or influenced the exercise of decision-making authority" for the gang. *Id.*[1] And

---

[1] The U.S. Attorney alleges that Wynn was "one of the most senior members" of the 110 Gang. That claim, which the U.S. Attorney apparently raises for the first time on appeal, does not appear to have any basis in the record.

most crucially, "the nature and extent of [Wynn's] participation in the commission of the [gang's] criminal activity" appears to pale in comparison to that of his fellow gang members. *Id.* Wynn engaged in five street-level sales of a total of under $2500 worth of crack cocaine. On the other hand, the PSR relates that numerous other gang members carried firearms, engaged in repeated and serious violence, perpetrated financial crimes, and coordinated a complex narcotics distribution business over a six-year period. Not only does the record lack evidence of Wynn's involvement in these activities, Wynn was incarcerated for four of those years.[2]

The U.S. Attorney attempts to supply additional support for the district judge's decision by arguing that Wynn was a "significant drug distributor for the 110 Gang." But the U.S. Attorney fails to identify any evidence or even allegations of Wynn's gang-related drug distribution aside from the five incidents to which Wynn admitted and which formed the factual basis for the offense to which he pleaded guilty. Indeed, the district

---

[2] The record seems silent as to the final factor, "the degree to which the defendant stood to benefit from the criminal activity." *Id.*

judge did not find (either explicitly or via his adoption of the PSR) that Wynn's gang-related drug dealing involved anything more or that Wynn was a "significant drug distributor for the 110 Gang."

Nor is it significant, as the PSR stated in explaining its decision to not recommend a role adjustment, that Wynn participated in one of the 110 Gang's "primary purposes." The mitigating role analysis in a RICO case is focused on the "*nature and extent*" of the defendant's "participa[tion]," U.S.S.G. § 3B1.2 application note 3(C)(iv) (emphasis added), in the "overall RICO enterprise," *Ivezaj*, 568 F.3d at 99, not the specific type of criminal activity the defendant furthered and its centrality to the enterprise. And as we observed earlier, the application notes provide that even "a defendant [who] performs an essential or indispensable role in the criminal activity . . . may receive a[] [mitigating role] adjustment." U.S.S.G. § 3B1.2 application note 3(C).

## CONCLUSION

The district judge correctly applied Guidelines section 2D1.1(b)(1)'s dangerous weapon enhancement. The district judge, however, erred in

16

denying Wynn a mitigating role adjustment without first addressing many relevant factors that appear to support such an adjustment. In light of the district judge's failure to adequately explain that denial, we **VACATE** Wynn's sentence and **REMAND** this case for resentencing consistent with this opinion.