# United States Court of Appeals
## For the First Circuit

No. 23-1162

UNITED STATES,

Appellee,

v.

DIONEL GUÍA-SENDEME,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Raúl M. Arias-Marxuach, U.S. District Judge]

Before

Gelpí, Thompson, and Aframe,
Circuit Judges.

Joanna E. LeRoy, with whom Rachel Brill, Federal Public
Defender, District of Puerto Rico, Héctor L. Ramos-Vega, Interim
Federal Public Defender, District of Puerto Rico, Franco L.
Pérez-Redondo, Assistant Federal Public Defender, Supervisor,
Appeals Division, and Kevin E. Lerman, Assistant Federal Public
Defender, were on brief, for Appellant.

W. Connor Winn, with whom W. Stephen Muldrow, United States
Attorney, Mariana E. Bauzá-Almonte, Assistant United States
Attorney, Chief, Appellate Division, and David C. Bornstein,
Assistant United States Attorney, were on brief, for Appellee.

April 4, 2025

**AFRAME, Circuit Judge.** Dionel Guía-Sendeme ("Guía") appeals from a 72-month sentence imposed for his participation in a venture to smuggle 135 kilograms of cocaine from the Dominican Republic to Puerto Rico. For his role in operating a small vessel to transport the narcotics, Guía pleaded guilty to, inter alia, importing and possessing with intent to distribute five kilograms or more of cocaine.

In determining Guía's sentence, the district court calculated an advisory guideline sentencing range of 108 to 135 months. Guía challenges that calculation. He contends that the court misapplied the United States Sentencing Guidelines ("U.S.S.G." or "the Guidelines") by: (1) refusing to apply a mitigating role adjustment under U.S.S.G. § 3B1.2 and (2) assigning a firearm enhancement under U.S.S.G. § 2D1.1(b)(1). We conclude that the district court properly assessed the firearm enhancement but must reconsider Guía's eligibility for a mitigating role adjustment. We therefore remand for resentencing.

## I.

We draw the facts from undisputed portions of the final presentence report, the sentencing hearing, and the sentencing record. See United States v. Coplin-Benjamin, 79 F.4th 36, 38-39 (1st Cir. 2023); United States v. Melendez-Hiraldo, 82 F.4th 48, 51 n.1 (1st Cir. 2023).

- 3 -

On July 10, 2021, a recruiter approached Guía in the Dominican Republic and offered to pay him to move gasoline tanks onto a boat that would be used for smuggling. Guía assumed the boat would be smuggling undocumented individuals. He agreed to the job and was introduced to Abel, one of two people who would be operating the vessel. During the meeting, Abel or the recruiter informed Guía that he would be paid $10,000.

Following the introduction, Guía and Abel attended a larger meeting that included as many as a dozen people. Guía contends that it was during this second meeting that he realized the venture involved smuggling drugs, not undocumented individuals. The meeting participants were briefed on the operation and were told to meet early the next morning at a set location.

The following day, Guía and Abel arrived late to the designated meeting place. There were several individuals present and the gasoline tanks had already been loaded onto the vessel. The individual assigned to crew the vessel with Abel did not arrive and as a result, Guía was asked to accompany Abel in the boat to a nearby location. Guía agreed.

Before leaving shore, Guía watched Abel receive a GPS device, a compass, two phone numbers, and a handgun; someone thereafter taught Guía how to operate the GPS device. The two

were also informed that there would be a second vessel monitoring for law enforcement.

Once on the water, the second vessel met up with Abel and Guía's vessel and transferred an initial freight of drugs. Abel and Guía then navigated to a separate location along the shore where several other individuals emerged from bushes to load more drugs onto their vessel.

At the second location, the individual originally designated to crew the vessel with Abel again failed to show. Guía was then offered an extra $10,000 to accompany Abel to Puerto Rico. He agreed. They set off the next day for a designated location in Puerto Rico where they would unload the drugs. Upon arriving at the drop off location, law enforcement converged. Officers seized 135 kilograms of cocaine. Guía was caught while Abel evaded apprehension.

Guía was indicted on four counts: (1) conspiring to import five kilograms or more of cocaine into the United States, 21 U.S.C. §§ 952(a), 960(a), (b)(1)(B), and 963; (2) importing five kilograms or more of cocaine into the United States, 21 U.S.C. §§ 952(a), 960(a), (b)(1)(B), and 18 U.S.C. § 2; (3) conspiring to possess with intent to distribute five kilograms or more of cocaine, 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), and 846; and (4) possessing with intent to distribute five kilograms or more cocaine, 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), and 18 U.S.C. § 2.

In August 2022, Guía pleaded guilty to all counts without a plea agreement. Prior to the sentencing hearing, the U.S. Probation Office ("Probation") filed a second addendum to the presentence report.[1] Relying principally on an interview with Guía that was memorialized in an October 2022 Report of Investigation, Probation concluded that Guía did not warrant a mitigating role adjustment under U.S.S.G. § 3B1.2 but did merit a firearm enhancement under U.S.S.G. § 2D1.1(b)(1) because he admitted that he saw his coconspirator Abel possess a firearm prior to leaving shore.

On January 18, 2023, the district court imposed sentence. At several points during the sentencing hearing, Guía objected to the presentence report's recommendation that the court deny him a mitigating role adjustment and apply a firearm enhancement. Following the parties' arguments, the court adopted the presentence report recommendations. The court found a total offense level of 31 and a criminal history category of I, which yielded an advisory guideline sentencing range of 108 to 135 months.[2] The court then granted a downward variance, settling on a seventy-two-month sentence.

---

[1] Probation filed a final presentence report on January 20, 2023, following the sentencing hearing.

[2] The district court's calculation began with a base offense level of 34. The court then applied a two-level firearm enhancement, U.S.S.G. § 2D1.1(b)(1); a two-level safety valve

At the end of the hearing, Guía's counsel objected to the sentence. The court denied the objections and added seventy-two months "is a sentence that I would have given in this case regardless of the objections, even if you had prevailed in the objections."

This appeal followed.

**II.**

Before this Court, Guía claims two procedural sentencing errors. First, he contends that the district court incorrectly denied him a mitigating role reduction under U.S.S.G. § 3B1.2. Specifically, he argues that the district court failed to properly perform the mitigating role analysis required by the Guidelines. Second, he contends that the court erroneously imposed a firearm enhancement under U.S.S.G. § 2D1.1(b)(1) by not specifically finding that his coconspirator's firearm possession was reasonably foreseeable to him.[3]

---

reduction, U.S.S.G. § 5Cl.2(a); and a three-level reduction for accepting responsibility, U.S.S.G. § 3El.1; resulting in a total offense level of 31.

[3] Unrelated to any sentencing error, Guía requests a remand for plenary resentencing pursuant to Amendment 821, Part B -- a revision to the Sentencing Guidelines that was promulgated after his sentence and, if applicable, could reduce his advisory guideline range. See U.S.S.G. Supp. App. C, Amend. 821, pt. B (2023). Because of our remand disposition, we do not consider this request. However, the district court may grant Guía the benefit of Amendment 821 at his resentencing if it determines that he so qualifies.

- 7 -

These are preserved challenges to the procedural reasonableness of Guía's sentence. We therefore review them for an abuse of discretion. See, e.g., United States v. Mendoza-Maisonet, 962 F.3d 1, 20 (1st Cir. 2020) ("We generally review procedural reasonableness challenges under 'a multifaceted abuse-of-discretion standard.'" (quoting United States v. Arsenault, 833 F.3d 24, 28 (1st Cir. 2016))). Under that standard, we review the sentencing court's interpretation and application of the Sentencing Guidelines de novo, its factfinding for clear error, and its exercise of judgment for abuse of discretion. Id.

**III.**

**A.**

We begin with Guía's challenge to the denial of his request for a mitigating role adjustment under the Sentencing Guidelines. Before sentencing a defendant, a court must correctly calculate a guideline sentencing range. See United States v. Millan-Isaac, 749 F.3d 57, 66 (1st Cir. 2014) (explaining that district courts must "begin all sentencing proceedings by correctly calculating the applicable Guidelines range" (quoting Gall v. United States, 552 U.S. 38, 49(2007))). To calculate that range, the court starts with the crime's base offense level and then adjusts that figure up or down "for any aggravating or mitigating factors" to yield a total offense level. United States v. Martínez-Benítez, 914 F.3d 1, 2 n.2 (1st Cir. 2019). The total

offense level is then combined with the defendant's criminal history category to determine the applicable guideline sentencing range. Id. Because a sentencing range can "substantially influence a particular defendant's sentence," United States v. Giggey, 551 F.3d 27, 29 (1st Cir. 2008), a court's determination on whether to apply a sentencing adjustment, such as the mitigating role adjustment, can have important implications for the sentence finally imposed.

We turn now to the specifics of the mitigating role provision of the Sentencing Guidelines. Section 3B1.2(b) of the Guidelines authorizes the district court to consider reductions in a defendant's offense level where the defendant is a minor or minimal participant in the relevant criminal activity. See U.S.S.G. § 3B1.2(a)-(b). "A defendant may receive a four-point reduction if he is a minimal participant; a two-point reduction if he is a minor participant; and a three-point reduction if his culpability falls somewhere between minimal and minor." United States v. Walker, 89 F.4th 173, 185 (1st Cir. 2023) (citing U.S.S.G. § 3B1.2). A defendant "bears the burden of proving, by a preponderance of the evidence, that he is entitled to [a mitigating role adjustment]." United States v. Arias-Mercedes, 901 F.3d 1, 5 (1st Cir. 2018) (quoting United States v. Pérez, 819 F.3d 541, 545 (1st Cir. 2016)).

To determine whether a defendant has met this burden, a sentencing court performs a four-part analysis. First, it must identify the universe of participants involved in the relevant criminal activity. See Arias-Mercedes, 901 F.3d at 6 ("[T]he court must consider a universe composed of those involved in '[the] relevant conduct as a whole.'" (quoting United States v. Vargas, 560 F.3d 45, 50 (1st Cir. 2009))); see also United States v. Dominguez-Caicedo, 40 F.4th 938, 960 (9th Cir. 2022) (explaining that the defendant must be compared against "all likely participants in the criminal scheme") (citation omitted). A "participant" is someone "who is criminally responsible for the commission of the offense, but need not have been convicted." Arias-Mercedes, 901 F.3d at 6 (quoting U.S.S.G. § 3B1.1, cmt. n.1). To be considered a participant, there must be sufficient evidence of the person's existence and involvement in the crime. See id. at 7 (citing United States v. Rodríguez De Varón, 175 F.3d 930, 944 (11th Cir. 1999) (noting that participants must be discernable from the record)).

Second, the sentencing court must order each participant along a continuum based on the degree of culpability in the criminal activity. See Walker, 89 F.4th at 185. "'Those who are primarily responsible stand on one end,' while 'the least culpable participants . . . stand at the opposite end.'" Id. (quoting United States v. Andino-Rodríguez, 79 F.4th 7, 34 (1st Cir. 2023)).

- 10 -

Third, the sentencing court must identify the average participant across all likely participants in the criminal scheme. See id. (explaining that "as a threshold matter," courts must determine if a defendant is "substantially less culpable than the average participant in the criminal activity" (quoting United States v. Mendoza-Maisonet, 962 F.3d 1, 23 (1st Cir. 2020))). In determining the average, the court need not "identify a single 'average participant'" among the universe of discernable participants involved in the relevant conduct. United States v. Chichande, 113 F.4th 913, 916 (9th Cir. 2024) (quoting Dominguez-Caicedo, 40 F.4th at 963); see also Dominguez-Caicedo, 40 F.4th at 960 (explaining that "the mitigating role commentary instructs courts to compare the defendant's culpability to . . . the mathematical average, i.e., a 'single value that represents the midpoint of a broad sample of subjects'" (quoting Average, Black's Law Dictionary (11th ed. 2019))). Nor must the court "engage in a precise, numerical calculation." Chichande, 113 F.4th at 920. Rather, the court should seek to identify a ballpark average among those involved in the relevant conduct.

Finally, the sentencing court must compare the defendant's role in the criminal activity to the average participant's role. See Walker, 89 F.4th at 185-86. This is a two-part inquiry. The defendant must first demonstrate that they are "substantially less culpable than the average participant in

the criminal activity." Id. at 185 (quoting Mendoza-Maisonet, 962 F.3d at 23). Then, depending on whether the defendant seeks to be considered a minor or minimal participant, they must either demonstrate that they are "less culpable than most other participants in the criminal activity," id. (quoting U.S.S.G. § 3B1.2 cmt. n.5), or "plainly among the least culpable of those involved," id. (quoting U.S.S.G. § 3B1.2 cmt. n.4).

To measure a defendant's culpability against that of the average participant, the sentencing court must consider five non-exhaustive factors [hereinafter § 3B1.2 factors]. See U.S.S.G. § 3B1.2 cmt. n.3(C); Walker, 89 F.4th at 187 ("[T]he Guidelines have channeled decision-making about culpability through five non-exhaustive factors to determine whether a defendant is eligible for a mitigating-role reduction."). They are as follows:

    i.    The degree to which the defendant understood the scope and structure of the criminal activity;

   ii.    The degree to which the defendant participated in planning or organizing the criminal activity;

 iii.    The degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

  iv.    The nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

v.	The degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2 cmt. n.3(C).

In addition to the § 3B1.2 factors, the sentencing court must consider "the totality of the circumstances and . . . the facts of the particular case."  Id.  Whether a defendant played "an essential or indispensable role in the criminal activity is not determinative" of eligibility.  Id.; see also Walker, 89 F.4th at 188 (explaining that whether the defendant played an integral role "is not the correct legal standard").

**B.**

In articulating its rationale for denying Guía a mitigating role adjustment, the district court proceeded directly to the § 3B1.2 factors, specifically the first and fourth factors.  See U.S.S.G. § 3B1.2 cmt. n.3(C).  It began by reciting the first factor -- "the degree [to which] the [d]efendant understood the scope and structure of the criminal activity."  It then stated that the criminal activity

> unfolded in stages but, eventually, there came a point where [Guía] was on board a vessel with narcotics.  He did not step out of the vessel.  He did not back out of the venture. What is the criminal activity here?  A hazardous voyage to Puerto Rico, from the Dominican Republic, in a tiny vessel.  He is one of two crew members.

The district court next focused on the fourth factor -- "the nature and extent" of the defendant's participation

- 13 -

in the venture.  It recited the factor and stated, "[a]gain, [Guía] is aiding and abetting that [m]aritime transport of narcotics."

Finally, the district court read the following sentence from Arias-Mercedes: "When a person undertakes to provide material assistance in transporting a large quantity of drugs, as a member of a tiny crew in a hazardous voyage at sea, it ordinarily will not be clear error for the [court] to refuse him a mitigating role adjustment."[4]  901 F.3d at 8.  The court then denied Guía's request for any mitigating role adjustment.

### C.

Guía makes two arguments regarding the mitigating role adjustment.  He first argues that the district court did not properly identify the universe of participants in his criminal activity, which, he says, is a necessary precondition for performing an accurate mitigating role analysis.  He separately contends that the court did not use the § 3B1.2 factors to measure his relative culpability vis-à-vis the other participants.  We agree in both respects.

---

[4] As we note above, this passage comes from Arias-Mercedes, 901 F.3d at 8.  However, when reciting this passage during the sentencing hearing, the district court appeared to have mistakenly referred to United States v. De La Cruz-Gutiérrez, 881 F.3d 221, 227 (1st Cir. 2018) as the source.  De La Cruz-Gutiérrez does not include the relevant passage.  Accordingly, we assume the court was reading from Arias-Mercedes.

- 14 -

**1.**

As already described, to decide whether to apply a mitigating role adjustment, a sentencing court must conduct a searching inquiry into a defendant's relative culpability. See Walker, 89 F.4th at 187 (describing the analysis as requiring "a judgment about the defendant's own conduct and a comparison to the other participants"). The first step in such an inquiry is to determine the universe of participants involved in the criminal activity. See Arias-Mercedes, 901 F.3d at 6. That is the essential starting point because a court cannot conduct a meaningful comparison of relative culpability without first identifying the field of comparators.

The district court conducted its mitigating role analysis by identifying only two participants -- Guía and Abel -- based on their presence aboard the boat when it was apprehended. The court appeared to conclude that it was required by Arias-Mercedes to narrowly circumscribe the universe of participants to just the "tiny crew in [the] hazardous voyage at sea" despite record evidence of other possible accomplices. As we explain, the court's approach is not required by Arias-Mercedes nor the Sentencing Guidelines. We first address the Guidelines.

The Sentencing Guidelines instruct courts on how to determine the universe of participants for purposes of the mitigating role adjustment. As a general matter, the Guidelines

are unambiguous that any determination as to a "defendant's role in the offense is to be made on the basis of all conduct within the scope of [U.S.S.G.] § 1B1.3 (Relevant Conduct) . . . and not solely on the basis of elements and acts cited in the count of conviction." U.S.S.G. ch.3, pt. B, introductory cmt.

Turning to U.S.S.G. § 1B1.3, the Guidelines define the scope of relevant conduct for "jointly undertaken criminal activity" as "all acts and omissions of others that were -- (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). This not only includes all activities "that occurred during the commission of the offense of conviction," but also those undertaken "in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." Id.

However, § 1B1.3 contains an important qualifier: "[T]he scope of the 'jointly undertaken criminal activity' is not necessarily the same as the scope of the entire conspiracy." Id. § 1B1.3, cmt. n.3(B). When a defendant, for example, "joins an ongoing drug distribution conspiracy," relevant conduct constitutes only those drug shipments with which the defendant is personally aware, not other shipments facilitated by the broader conspiracy of which the defendant is unaware. Id.; see also

- 16 -

U.S.S.G. § 3B1.2, cmt. n.3(A) ("[A] defendant who is convicted of a drug trafficking offense . . . who is accountable under § 1B1.3 only for the quantity of drugs the defendant personally transported or stored may receive an adjustment under this [G]uideline.").

Applied to drug shipments, the Guidelines require a sentencing court, when performing a mitigating role assessment, to limit the scope of the inquiry to the drug shipments for which the defendant is accountable. See U.S.S.G. § 1B1.3, cmt. n.3(B), n.4(A)(i); see also Arias-Mercedes, 901 F.3d at 7 (limiting the scope of conduct to the "particular drug-smuggle"). From there, the court must compare the defendant against all likely participants involved with the shipment, including those involved with the shipment's preparation and efforts to avoid detection. See U.S.S.G. § 1B1.3(a)(1)(B); see also Vargas, 560 F.3d at 49-50 (explaining that courts should consider relevant conduct not "predicated 'solely on the basis of elements and acts cited in the count of conviction'" but also those acts that "were reasonably foreseeable by the defendant and committed in furtherance of the conspiracy" (first quoting U.S.S.G. ch.3, pt. B, introductory cmt.; and then quoting United States v. García, 954 F.2d 12, 15 (1st Cir.1992)); see also Dominguez-Caicedo, 40 F.4th at 963 (finding legal error where the court excluded from its mitigating role analysis "leaders or organizers" such as the recruiter); United States v. Rodriguez, 44 F.4th 1229, 1234 (9th Cir. 2022)

(same). In the specific situation of maritime drug shipments, this squarely implicates not just those who operated the vessel, but also those who helped recruit other participants, loaded and unloaded the drugs on and off the vessel, and monitored for law enforcement.

Limiting the universe of participants to only those aboard "the hazardous voyage" when performing a mitigating role analysis, as the district court did here, is inconsistent with the Guidelines' intent for courts to consider a defendant's role based on all relevant conduct under U.S.S.G. § 1B1.3. It also does not meet the purpose of the adjustment: to ensure that a sentence reflects the defendant's actual role in the offense. See United States v. Lilly, 13 F.3d 15, 19 (1st Cir. 1994) (stating that "the role-in-the-offense adjustment . . . is aimed . . . at measuring the culpability of a defendant's conduct in the commission of the offense and increasing (or reducing) the punishment in rough proportion to the defendant's involvement"). Instead, it yields a guideline range that inaccurately reflects the defendant's relative culpability in the criminal activity.

Moreover, the Guidelines have been specifically amended to address the reality that courts have applied § 3B1.2 "more sparingly than the Commission intended." United States v. Sarmiento-Palacios, 885 F.3d 1, 5 (1st Cir. 2018) (quoting U.S.S.G. Supp. App. C, Amend. 794, at 116-18 (2015) [hereinafter Amend.

794]).  Yet, comparing a defendant in a maritime drug shipment case only to those aboard the vessel, despite evidence of conduct by other participants, works to limit the availability of the adjustment by guaranteeing that the defendant often will be compared against a smaller, less representative pool of participants.

Having established that foundation, we turn to Arias-Mercedes.  As we note above, the district court appeared to read Arias-Mercedes to require that it confine its mitigating role analysis to the participants on the boat when law enforcement interceded.  To the contrary, Arias-Mercedes closely follows the Guidelines' approach for identifying the universe of participants in a maritime drug shipment prosecution.

Like this case, Arias-Mercedes involved a defendant who was "one of three men who brought a drug-laden vessel into the maritime jurisdiction of the United States."  901 F.3d at 7.  On appeal, the defendant challenged the denial of a mitigating role reduction, arguing that the sentencing court "did not properly identify the universe of participants."  Id. at 6.  The defendant claimed that the court erred in "compar[ing] his conduct only to that of [the two crewmembers on his boat], not to the full pantheon of co-conspirators (whether indicted or unindicted) in the broader drug-smuggling enterprise."  Id.  We found no clear error in

restricting the universe of participants to those individuals on the vessel at the time that it was intercepted.  Id. at 7-8.

Our analysis in Arias-Mercedes began by stating that when considering a mitigating role adjustment, "court[s] must consider a universe composed of those involved in '[the defendant's] relevant conduct as a whole.'"  Id. at 6 (quoting Vargas, 560 F.3d at 50).  The analysis then turned to the operative question: where to draw the line between relevant conduct and the "broader drug-smuggling enterprise."  Id.  We held that when evaluating relevant conduct, courts must appraise a defendant's role "in the specific criminal activity for which he is being held accountable" and not "in the broader conspiracy."  Id. (citing Amend. 794).  In the specific case, "[w]here a defendant is hired to transport a single shipment of drugs and does not otherwise participate in the larger conspiracy," a defendant's "relevant conduct ordinarily will be limited to that shipment."  Id. (alteration in original) (quoting Vargas, 560 F.3d at 49-50).  Applying that standard, we found that because the "defendant's base offense level was determined by reference to the specific drug quantity involved in that singular transport[,] not the amount trafficked through any broader conspiracy . . . the conduct for which the defendant is being held responsible is his role in that voyage."  Id. at 7.

We then considered the "persons directly involved in this particular drug-smuggle." Id. Describing the inquiry as "invariably fact-specific," id. (quoting United States v. Meléndez-Rivera, 782 F.3d 26, 28 (1st Cir.2015)), we concluded that the defendant had not identified, with sufficient particularity, any other participants beyond those aboard the vessel, see id. (citing as support "'references' [in the record] to unindicted and unidentified persons who had links to the broader criminal organization").

Our analysis in Arias-Mercedes tracks the Guideline methodology. It instructs sentencing courts to "consider a universe composed of those involved in '[the] relevant conduct as a whole.'" Id. at 6 (quoting Vargas, 560 F.3d at 50). It clarifies that relevant conduct does not extend to a defendant's "role in the broader conspiracy" but only to the defendant's "role in the specific criminal activity for which he is being held accountable." Id. In the particular instance "[w]here a defendant is hired to transport a single shipment of drugs," it limits the scope of relevant conduct to only that shipment. Id. (quoting Vargas, 560 F.3d at 49-50). And it directs courts to perform a fact-intensive inquiry to identify all those participating in that shipment. Id. at 7.

While Arias-Mercedes ultimately upheld the district court's decision to compare the defendant's role only against the

crewmembers aboard the vessel, that was a fact-specific determination based on the absence of record evidence showing other identifiable participants.  Id. (noting that a sentencing court cannot make mitigating role adjustments based on speculation).  To infer from that determination a broad rule that the universe of participants always consists of only those on the boat -- even when there are other discernable participants involved in the criminal activity -- is to mistake the factual outcome of Arias-Mercedes for the legal principles underlying it.

The government contends otherwise.  It starts from the premise that sentencing courts should only consider participants involved in "the specific criminal activity for which [the defendant] is being held accountable."  It then argues that Arias-Mercedes expressly defined the specific criminal activity as the defendant's "role in that voyage" and only considered "those coconspirators who participated" in the voyage.  Generalizing from this reasoning, the government contends that as a rule, "even when there are other known participants in the conspiracy, the court should consider only those participants on a voyage when the defendant is being held responsible only for his 'role in that voyage.'"

This argument rests on an overly literal interpretation of the word "voyage" as used in Arias-Mercedes.  In the opinion, we used the term "voyage" to refer to the specific criminal act of

transporting a single shipment of drugs, not just the activity on the boat. Id. at 6-7. As the opinion notes, "[w]here a defendant is hired to transport a single shipment of drugs and does not otherwise participate in the larger conspiracy, his relevant conduct ordinarily will be limited to that shipment." Id. at 6 (quoting Vargas, 560 F.3d at 49-50). The opinion continues, the "defendant's base offense level was determined by reference to the specific drug quantity involved in that singular transport -- not the amount trafficked through any broader conspiracy." Id. at 7. Only after that statement does the opinion assert, "[i]t follows that the conduct for which the defendant is being held responsible is his role in that voyage." Id. Finally, in the very next sentence, the opinion refers again to the drug shipment, writing that "[g]iven the scope of the conduct . . . there is no principled way in which we can find clear error in the district court's decision to limit its comparison only to those persons directly involved in this particular drug-smuggle." Id. (emphasis added). When read as a whole, it is clear that the opinion used "voyage" to generally describe the single drug shipment with which the defendant was involved.

The government's reading of Arias-Mercedes also does not account for the opinion's focus on a fact-specific inquiry. The opinion establishes a two-step analysis for determining the universe of participants. First, sentencing courts must identify

- 23 -

the "relevant conduct as a whole." Id. at 6 (quoting Vargas, 560 F.3d at 50). This is a legal determination requiring a court to identify the "scope of the conduct for which the defendant is being held accountable." Id. at 7. After that, courts must conduct an "invariably 'fact-specific' inquiry" in order "to identify the universe of participants involved in the particular conduct." Id. (quoting Meléndez-Rivera, 782 F.3d at 28). It is at this second "fact-specific" step that Arias-Mercedes finds insufficient evidence of other participants to question the district court's decision to focus only on the people aboard the vessel. Id.

The government's preferred reading of Arias-Mercedes would negate any reason for this second step. Such an inquiry is necessary, however, because the universe of participants in a maritime drug shipment may vary based on the extent to which the record permits a court to identify participants beyond those on the boat. If sentencing courts were required to limit the universe of participants only to those aboard the vessel, the fact-specific inquiry would serve no purpose.

Finally, the government identifies United States v. Castillo, 995 F.3d 14 (1st Cir. 2021), as further support for its argument that the universe of participants in maritime drug shipment cases should be relegated to only those on the vessel. As in Arias-Mercedes, the case involved three men on a vessel near Puerto Rico who were caught smuggling drugs. See 995 F.3d at 16,

- 24 -

In addressing whether the defendant warranted a mitigating role adjustment, Castillo defined the relevant conduct as the act of "transporting this particular batch of drugs." Id. at 18. Relying on Arias-Mercedes, this Court then summarily dismissed the defendant's argument "that the district court should have considered Castillo's role in the larger drug conspiracy." Id.

Nothing we say here conflicts with Castillo. Again, "[w]here a defendant is hired to transport a single shipment of drugs and does not otherwise participate in the larger conspiracy, his relevant conduct ordinarily will be limited to that shipment." Arias-Mercedes, 901 F.3d at 6 (quoting Vargas, 560 F.3d at 49-50). Moreover, when performing a mitigating role analysis, sentencing courts should include in their comparison only those persons directly involved in that shipment. Id. We simply add that in establishing the universe of relevant participants, courts must consider all likely participants involved in the relevant conduct pursuant to U.S.S.G. § 1B1.3 -- and not just those on the boat.

Based on this understanding of the Sentencing Guidelines and Arias-Mercedes, the district court should not have limited the universe of participants only to the "tiny crew in a hazardous voyage at sea." Rather, the court should have considered the record evidence to determine whether there were other discernable participants in the drug shipment. On remand, the district court must consider the scope of Guía's relevant conduct and then decide,

based on the record, which individuals were sufficiently involved in that conduct such that they should be included in the universe of participants under U.S.S.G. § 3B1.2.

**2.**

The specific error of incorrectly assessing the universe of participants was compounded by the district court's misapplication of the § 3B1.2 factors for purpose of comparing Guía's conduct to that of other participants.

It is insufficient for a sentencing court to merely recite the relevant § 3B1.2 factors and apply them to a defendant's conduct. The point of the § 3B1.2 factors is to assist a court in making "a judgment about the defendant's own conduct and a comparison to the other participants." Walker, 89 F.4th at 187; see also Rodriguez, 44 F.4th at 1234 (noting that sentencing courts cannot "treat each factor as presenting a binary choice . . . [rather,] courts [must] analyze the degree to which each factor applies to the defendant").

Here, the district court made no such comparison. It instead relied on the factors to recapitulate why Guía was guilty of the offense. Consider the district court's treatment of the first § 3B1.2 factor -- Guía's knowledge of the scope of the criminal activity. U.S.S.G. § 3B1.2 cmt. n.3(C). Instead of evaluating how Guía's knowledge compared to other participants, the court noted only that Guía "did not back out of the venture."

Similarly, when assessing the fourth factor, "the nature and extent of the defendant's participation," id., the court observed that Guía "aid[ed] and abett[ed] [the] [m]aritime transport of narcotics." These are the facts that made Guía guilty. They do not illuminate his relative culpability.

By not assessing Guía's relative culpability, the court did not fully perform the mitigating role analysis. See Walker, 89 F.4th at 188 (emphasizing "that comparing participants based on the Guideline factors is critical"). The purpose of the § 3B1.2 factors is not to establish guilt; it is to help a court decide whether to apply leniency because a defendant, while guilty, played a substantially subordinate role in the criminal activity. On remand, the district court should employ the § 3B1.2 factors to assess relative culpability among the universe of participants to determine whether Guía should receive a mitigating role adjustment.[5]

---

[5] Guía makes two related arguments. He first contends that the district court erred by failing to address each of the § 3B1.2 factors. We have held that courts need not "list expressly the factors enumerated in Application Note 3(C)." Castillo, 995 F.3d at 18; see also United States v. Wynn, 37 F.4th 63, 68 (2d Cir. 2022). However, courts must address all § 3B1.2 factors that are pertinent to the inquiry. See Wynn, 37 F.4th at 68-69 (vacating a sentence where district court failed to consider several relevant mitigating role factors). Moreover, when addressing the § 3B1.2 factors, courts "must give sufficient explanation to 'allow for meaningful appellate review.'" Walker, 89 F.4th at 187 (quoting Gall v. United States, 552 U.S. 38, 50 (2007)); see also Wynn, 37 F.4th at 68 (remanding for resentencing

**3.**

Finally, we address the government's contention that even if the district court did not properly perform a mitigating role analysis, we should nevertheless find the error harmless. The government argues harmlessness on the ground that the district court (1) imposed a sentence below the advisory guideline range and (2) stated, just before closing the sentencing hearing, that seventy-two months was the "sentence that [it] would have given in this case regardless of the objections."

"A district court's error in calculating the guideline range requires resentencing where it 'affects or arguably affects the sentence imposed.'" United States v. Lacouture, 835 F.3d 187, 189 (1st Cir. 2016) (quoting United States v. Ramos-Paulino, 488 F.3d 459, 463 (1st Cir. 2007)). Where "there is at least a possibility that the court would have imposed an even more lenient sentence had it started with a lower [guideline range]," that

_____

because "[t]he district judge's decision lack[ed] any analysis of [four of the] relevant mitigating role factors that the Guidelines provide"). As we are remanding for reconsideration under the proper legal standard, we leave it to the district court to decide in the first instance which § 3B1.2 factors are relevant here.

Guía separately contests the district court's specific consideration of the § 3B1.2 factors, arguing that "[e]ach of these factors shows . . . Guía was substantially less culpable than any other participant." Again, because we are remanding for application of the proper legal standard, we do not reach this argument. We leave it to the district court to decide, in accordance with the proper legal test, whether there is a sufficient basis to find a mitigating role adjustment.

"possibility . . . is enough to preclude a finding that an error in calculating the [guideline range] is harmless." United States v. Alphas, 785 F.3d 775, 780 (1st Cir. 2015) (emphasis omitted); cf. United States v. Ahmed, 51 F.4th 12, 23 (1st Cir. 2022) (finding that "[t]he record 'does not admit of such a possibility' here" (quoting United States v. Ayala, 991 F.3d 323, 327 (1st Cir. 2021))). However, where "a sentencing court makes clear that it would have entered the same sentence regardless of the Guidelines, any error in the court's Guidelines calculation is harmless." United States v. Rivera, 51 F.4th 47, 53 (1st Cir. 2022) (quoting United States v. Ouellette, 985 F.3d 107, 110 (1st Cir. 2021); see also id. (citing cases).

That said, it is not enough for a court simply to assert its intention to impose the same sentence. See United States v. Munoz-Camarena, 631 F.3d 1028, 1031 (9th Cir. 2011) ("A district court's mere statement that it would impose the same . . . sentence no matter what the correct calculation cannot, without more, insulate the sentence from remand."). The record must contain some justification for imposing that sentence. See Molina-Martinez v. United States, 578 U.S. 189, 201 (2016) ("Where . . . the record is silent as to what the district court might have done had it considered the correct Guidelines range, the court's reliance on an incorrect range in most instances will suffice to show an effect on the defendant's substantial rights.");

cf. United States v. Rijos-Rivera, 53 F.4th 704, 710 (1st Cir. 2022) (finding harmlessness where court's statement that it would enter the same sentence regardless of the Guidelines was coupled with "the evident basis in the record for a finding that the defendant's relevant conduct warranted a sentence of that length").

Here, the district court calculated an advisory guideline range of 108 to 135 months and then granted a downward variance, settling on a 72-month sentence. Then, in response to the defendant's formal objection to the mitigating role ruling, the court stated that it would have imposed a seventy-two-month sentence in any event.

However, had the district court granted Guía a mitigating role adjustment, the advisory guideline range may well have dropped below the seventy-two-month sentence that the court imposed.[6] In that situation, the court only could have sentenced Guía to seventy-two months by identifying aggravating factors warranting an above-guideline sentence. See United States v. Colón-Cordero, 91 F.4th 41, 51 (1st Cir. 2024) ("When a court imposes a sentence above the guidelines sentencing range, 'it must

---

[6] Notwithstanding any retroactive amendments for which Guía may be eligible, it is possible that were the court to grant a minimal role reduction, Guía could receive a total offense level of 24, which corresponds to a sentencing guideline range of 51 to 63 months. Guía's counsel confirmed this range at oral argument.

justify the upward variance.'" (quoting United States v. Del Valle-Rodríguez, 761 F.3d 171, 176 (1st Cir. 2014))).

The district court identified no such factors. In sentencing Guía, the court focused solely on mitigating considerations, including, inter alia, that Guía was a nonviolent, first-time offender who played a limited role in the venture. Given that (1) the court identified no aggravating factors and (2) Guía may, on remand, obtain an appreciably lower advisory guideline range, we are unable to conclude that there is no "possibility" of a "more lenient sentence" after a remand to correctly apply a mitigating role analysis under U.S.S.G. § 3B1.2. See Alphas, 785 F.3d at 780. For that reason, we reject the government's harmless error argument. Id. (holding the "possibility . . . enough to preclude a finding that an error in calculating the [guideline range] is harmless").

**D.**

Guía also challenges the district court's application of a two-level enhancement for the possession of a firearm during the drug offense pursuant to U.S.S.G. § 2D1.1(b)(1). Guía argues that the proper test for applying a firearm enhancement is whether it was "reasonably foreseeable" that a coconspirator would possess a weapon in furtherance of the criminal activity. He asserts that the district court did not make a proper "reasonably foreseeable"

finding and therefore lacked grounds for applying the enhancement. We disagree.

Under U.S.S.G. §§ 2D1.1(b)(1) and 1B1.3(a)(1), a sentencing court may apply a firearm enhancement where a defendant either knew that a coconspirator possessed a gun during the conspiracy or where possession was reasonably foreseeable. See, e.g., United States v. Alejandro-Montanez, 778 F.3d 352, 361 (1st Cir. 2015); United States v. Quiñones-Medina, 553 F.3d 19, 23 (1st Cir. 2009). Once knowledge or foreseeability is established, "[t]he enhancement should be applied . . . unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt. n.11(A); United States v. Hernández, 964 F.3d 95, 105-06 (1st Cir. 2020). Where there is sufficient evidence that a defendant knew a coconspirator possessed a gun during the conspiracy, a court need not make a foreseeability finding. See United States v. Greig, 717 F.3d 212, 219 (1st Cir. 2013) (describing reasonable foreseeability as a condition precedent to a more demanding showing of knowledge).

Here, it was undisputed that Guía knew that Abel possessed a firearm. During the sentencing, Guía conceded that he saw a man provide Abel with a gun before they boarded the boat. The court subsequently referred to this admission, stating that there was "uncontroverted evidence, even from [Guía's] own submissions . . . that the other crew person . . . did possess a

- 32 -

firearm."  Given this evidence, the district court had a sufficient basis to apply the firearm enhancement.  See United States v. Coleman, 854 F.3d 81, 86 (1st Cir. 2017) (affirming a firearm enhancement where defendant's "own admissions established his knowledge that others possessed firearms during the conspiracy").

Guía separately argues that the district court not only failed to make a finding as to "reasonable foreseeability," but also applied the enhancement based solely on "Guía's guilt for the drug conspiracy alone."  Not so.  As discussed above, the court based its decision on Guía's representations that he knew that Abel possessed a firearm.  The firearm enhancement was properly applied.

**IV.**

We **vacate** Guía's sentence and **remand** for resentencing consistent with this opinion.

**So ordered**.